**Araceli G. MARTINEZ, Plaintiff,**

v.

**COLE SEWELL CORPORATION, a/k/a New Cole Sewell Corporation, Tim Nichols,[1] and Brad Worrall, Defendants.**

No. C 01–3052–MWB.

United States District Court, N.D. Iowa, Central Division.

Dec. 6, 2002.

---

1. This defendant identifies himself in his deposition as Timothy E. Nickel. Therefore, he will be referred to throughout as "Nickel," rather than "Nichols."

James T. Fitzsimmons, Fitzsimmons & Vervaecke law, Mason City, IA, Mark D. Sherinian, Sherinian & Walker Law Firm, West Des Moines, IA, for Araceli G. Martinez.

Deborah M. Tharnish, Jo Ellen Whitney, Davis Brown Koehn Shors & Roberts, Des Moines, IA, for Cole Sewell Corp.

Jo Ellen Whitney, Davis Brown Koehn Shors & Roberts, Des Moines, IA, for Tim Nichols, Lori Thomas, Brad Worrall.

# MEMORANDUM OPINION AND ORDER REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. INTRODUCTION .......................................................1104
 A. Factual Background ................................................1104
 B. Procedural Background ............................................1107

II. LEGAL ANALYSIS .....................................................1108
 A. Standards For Summary Judgment ......................................1108
 1. Requirements of Rule 56 ........................................1109
 2. The parties' burdens ...........................................1109
 3. Summary judgment in employment discrimination cases .............1110
 B. Scope Of Martinez's Withdrawal Of Claims .........................1111
 1. Scope of the express withdrawal ................................1111
 2. Was there an implicit withdrawal of some claims? .................1113
 C. Title VII Claims .................................................1114
 1. Retaliation ....................................................1114
 a. Arguments of the parties .......................................1114
 b. Applicable law .................................................1116
 c. The record in light of applicable law ..........................1118
 i. Martinez's prima facie case of retaliation ..................1118
 ii. The shifting of burdens ...................................1121
 2. Constructive discharge .........................................1122
 a. Arguments of the parties .......................................1122
 b. Applicable law .................................................1122
 c. The record in light of applicable law ..........................1124

 *D.* *Disability Claims* ...............................................1124
 *1.* *Arguments of the parties* ........................................1124
 *2.* *Analysis in light of applicable law* ..............................1126
 *a.* *"Disability" within the meaning of the ADA* ...................1127
 *i.* *What type of disability is at issue?* .......................1127
 *ii.* *Actual disability* ........................................1127
 *iii.* *Record of disability* .....................................1131
 *b.* *Failure to accommodate* .......................................1132
 *i.* *The legal duty to accommodate* .............................1132
 *ii.* *Evidence of assignments beyond plaintiff's restrictions* ......1133
 *iii.* *Obligations in the "interactive process."* ..................1134
 *c.* *Hostile environment* ..........................................1135
 *d.* *Constructive discharge* .......................................1137
 *E.* *Intentional Infliction Of Emotional Distress* .........................1137
 *1.* *Arguments of the parties* ........................................1137
 *2.* *Applicable law* ..................................................1137
 *3.* *Application of the law* ...........................................1139

*III.* *CONCLUSION* ...................................................1140

Although, as Circuit Judge McMillian once observed, "[s]ummary judgment is not designed to weed out dubious claims, but to eliminate those claims with no basis in material fact,"[2] in the process of litigating the defendants' all-encompassing summary judgment motion in this employment discrimination case, the parties have themselves weeded out certain claims and issues. Although the court is still left with a daunting list of issues on which it must decide whether a jury question is presented, the parties' reevaluation of their claims and contentions is laudatory, as it is likely to focus attention on matters genuinely in dispute and to save the court and parties time and energy.

Somewhat more specifically, the plaintiff has expressly withdrawn her sex discrimination claims, instead narrowing the focus of this litigation to her national origin and disability discrimination claims. Similarly, the defendants have expressly withdrawn their motion for summary judgment with respect to the plaintiff's claim of a hostile work environment based on national origin. However, the defendants also argue that the plaintiff has implicitly narrowed her national origin claims by failing to respond to the defendants' contentions that she cannot generate a genuine issue of material fact on her claims of disparate treatment and constructive discharge based on national origin. The court must not only decide what is still at issue in the case and on the defendants' motion for summary judgment, but decide whether a jury question is presented on challenged issues.

## I. INTRODUCTION

### A. Factual Background

Whether or not a party is entitled to summary judgment ordinarily turns on whether or not there are genuine issues for trial, *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376–77 (8th Cir.1996); *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir.1990), and the court must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538; *Quick,* 90 F.3d at 1377 (same). Nevertheless, the court will not attempt here a comprehensive review of

---

**2.** *Wilson v. Myers,* 823 F.2d 253, 256 (8th Cir.1987).

the undisputed and disputed facts in the record, although some factual background is necessary to put in context the parties' arguments for and against summary judgment on the claims that remain at issue. Therefore, what is presented here is only a sketch of the essential factual background and factual disputes on the present record.

Plaintiff Araceli Martinez, who describes herself as Hispanic and of Mexican origin, began working for defendant Cole Sewell on August 18, 1999, as an assembler, parts processor, and core line operator on the "second shift" from 3:45 p.m. to 12:15 a.m. at Cole Sewell's plant in Clear Lake, Iowa, where the company manufactures doors. Unfortunately, shortly after she began working for Cole Sewell, she was injured on the job. She contends that, thereafter, she was repeatedly harassed by co-workers and supervisors because of her disability and national origin,[3] that Cole Sewell failed to accommodate her disabilities, and that Cole Sewell retaliated against her for complaining about harassment and discrimination. Her last day of work at Cole Sewell was June 17, 2000, although her employment apparently did not officially terminate until sometime in August 2000.

The first of Martinez's two on-the-job injuries occurred on August 26, 1999, when she hyper-extended her right thumb when she attempted to catch an 8.5 pound piece of falling glass. Although initial treatment apparently consisted only of first aid, Martinez went to the doctor in September, and again in November, for treatment of thumb pain. On November 3, 1999, Dr. DeBartolo instructed her to use a thumb splint while working and to avoid forceful pinching. On November 30, 1999, Dr. DeBartolo released Martinez to work "light duty" with no use of her right hand. Unfortunately, on December 7, 1999, Ms.

Martinez suffered a second injury at work, this time a strain to her left shoulder. However, she did not receive immediate medical treatment for that injury, either, but was eventually treated on January 7, 2000, at which time she was referred for two sessions of physical therapy and placed on a restriction of five pounds of force and no overhead activity with her left arm. Her previous restrictions on use of her right hand remained in place. Indeed, Ms. Martinez was placed on a "no work" restriction from December 14, until December 16, 1999, because of her prior thumb injury, and on December 16, 1999, Dr. DeBartolo extended that status through January 6, 2000. Martinez apparently remained on light duty work restrictions, with occasional periods on "no work" restrictions, for the remainder of her employment with Cole Sewell. Despite her continuing physical limitations, Martinez contends that her supervisors repeatedly assigned her work that was beyond her doctor-imposed restrictions and "coerced" doctors to change her restrictions beyond her actual capabilities. Cole Sewell admits that some of its supervisors believed that Martinez was exaggerating her discomfort while doing various jobs, because they believed that she was only assigned jobs within her restrictions.

During the course of her employment, Martinez contends that she was also subjected to harassment in the form of foul language, such as "fuck you," and "shit," and taunting, including comments that she was "lazy" and epithets like "spider," "mummy," "shitty Mexican" or "Mexican shit," and "wetback," and teased about an overbite. Although Martinez acknowledges that some of the foul language was used among co-workers to "get a laugh,"

---

**3.** Although Martinez originally claimed that she was also harassed because of her sex, she has since withdrawn that claim.

and not to offend each other, she contends that she was offended by it and was offended by the name-calling and teasing directed specifically at her. Martinez also complains that supervisors ridiculed and laughed at her about the way that she spoke English. Cole Sewell disputes the extent to which Martinez made her supervisors or managers aware of offensive language or alleged harassment or the extent to which those persons notified ignored her complaints when Cole Sewell acknowledges that Martinez did make complaints.

It is undisputed that Martinez filed an administrative charge dated February 15, 2000, with the Iowa Civil Rights Commission in which she alleged discrimination on the basis of national origin and sex. She later amended that administrative charge to allege disability discrimination as well. Cole Sewell also admits that Martinez made a formal in-house complaint of harassment on March 3, 2000, although Cole Sewell contends that Martinez declined to provide specifics about the harassment or to identify the harassers. Martinez contends that she did, in fact, identify the harassers, including supervisors present at the meeting, during what she describes as an "interrogation" on March 3, 2000. Cole Sewell initiated an investigation based on Martinez's March 3, 2000, complaint, but eventually notified Martinez that its investigation had not revealed any evidence of harassment. Martinez contends that Cole Sewell representatives also informed other line workers that the company had found no conduct constituting "harassment," which Martinez contends amounted to the company "condoning" the harassment. In its notice concerning the results of its investigation, Cole Sewell asked Martinez to provide any additional information that she had about the incident on which her complaint was based, and to notify Cole Sewell representatives if she had any more information or complaints about harassment. On April

28, 2000, Martinez filed a second complaint with the Iowa Civil Rights Commission in which she alleged that she had been retaliated against by Mr. Nickel, her direct supervisor, Ms. Thomas, the Director of Human Resources for Cole Sewell, and Mr. Fausnaugh.

On February 28, 2000, Martinez received a written warning for absenteeism based on what Cole Sewell viewed as excessive absenteeism and tardiness from work. Before Martinez left work again on March 2, 2000, she was warned that the absence would be treated as "unplanned." Martinez, however, contends that she left work on that day, because her supervisors had assigned her work beyond her medical restrictions. Martinez received a second warning about absenteeism on March 3, 2000. Cole Sewell contends that these notices and subsequent action by Cole Sewell were pursuant to Cole Sewell's Absenteeism/Tardiness Policy. On May 2, 2000, Martinez sent in a note from one of her doctors, who was in fact a psychiatrist, stating that she would not be working for "medical reasons" until May 9, 2000. Although Cole Sewell asserts that Mr. Worrall, a human resources specialist for the company, attempted to follow up with a request to Martinez's counsel for more information about her medical condition, Cole Sewell contends that it was not informed of the reason for the absence. Martinez, however, contends that the absences were pursuant to a note from her psychiatrist, who was treating her for emotional distress arising, at least in part, from harassment at work. On May 16, 2000, Martinez received a Notice of Suspension for three days for excessive absenteeism based on the two prior written warnings and eleven incidents of absences or tardies from May 2, 2000, to May 15, 2000. Martinez was also advised in the Notice that a further infraction would likely lead to her termination. Martinez's last

day at work at Cole Sewell was June 17, 2000, when a chiropractor provided a note that Martinez would be off work for the foreseeable future owing to her thumb injury. Martinez was not formally terminated until some time later.

### B. Procedural Background

After receiving right-to-sue letters from administrative agencies, Araceli Martinez filed her Complaint in this matter on June 8, 2001, and an Amended Complaint on June 21, 2001, naming as defendants Tim Nickel, her immediate supervisor, Lori Thomas, the Director of Human Resources for Cole Sewell, and Brad Worrall, a human resources specialist for Cole Sewell. The first three of the five counts of Martinez's Complaint are against Cole Sewell only. In Count I, Martinez alleges that she was subjected to a hostile work environment and disparate treatment because of her sex and national origin in violation of Title VII, 42 U.S.C. § 2000e, resulting in her actual or constructive discharge. In Count II, Martinez alleges that she was subjected to adverse employment action in retaliation for her opposition to discrimination in the workplace in violation of Title VII. In Count III, Martinez alleges that she is disabled within the meaning of the Americans with Disabilities Act (ADA), that she was subjected to a hostile work environment because of her disability, that Cole Sewell failed to accommodate her disability, and that Cole Sewell "actually constructively" discharged her. Counts IV and V of Martinez's Complaint are directed at all of the defendants, corporate and individual. In Count IV, Martinez alleges that she was subjected to a hostile environment because of her disability, sex, and national origin in violation of Iowa Code CH. 216, which is the Iowa Civil Rights Act (ICRA), and that the three individual defendants are personally liable for that illegal conduct, as well as Cole Sewell. In Count V, a common-law claim, Martinez alleges that the conduct previously alleged in the Amended Complaint constitutes intentional infliction of severe emotional distress for which the defendants can be held liable.

Cole Sewell and the individual defendants initially filed, then withdrew, a motion to dismiss Martinez's Amended Complaint. On August 31, 2000, the defendants filed a joint Answer to the Amended Complaint denying Martinez's claims. The case then proceeded without significant incident until the defendants filed the motion for summary judgment presently before the court.

In that motion, filed on October 2, 2002, and amended on October 4, 2002, the defendants contend that they are entitled to summary judgment on Martinez's Title VII and ICRA claims of retaliation, hostile environment harassment, disparate treatment, and constructive discharge based on sex and national origin; Martinez's disability discrimination claims, pursuant to the ADA and the ICRA, although the defendants originally only challenged the disability claims involving failure to accommodate and constructive discharge; and Martinez's common-law claim of intentional infliction of emotional distress, on the ground that the claim is preempted by Martinez's statutory discrimination and retaliation claims. In the defendants' view, therefore, at the time of filing, the motion for summary judgment would have entirely resolved this litigation if granted.

In her resistance, filed November 1, 2002, Martinez requests that the defendants' motion for summary judgment be denied in its entirety. However, in her "Brief in Resistance to Defendant's [sic] Motion for Summary Judgment" ("Plaintiff's Brief"), Martinez expressly withdraws her "claim of sexual discrimination," apparently including claims of hostile environment harassment, disparate treatment, and constructive discharge based on sex.

Although the defendants construe Martinez's withdrawal of her "sexual discrimination" claims to include withdrawal of her claim of retaliation based on complaints of sexual harassment, the court will leave for consideration below the precise scope of Martinez's express withdrawal. Martinez expressly resists the defendants' motion for summary judgment as to her Title VII retaliation claim; her claim of a hostile environment based on national origin in violation of state and federal law; her disability discrimination claims in violation of state and federal law, including a claim of hostile work environment based on disability, which is not mentioned in the defendants' motion for summary judgment; and her claim of intentional infliction of emotional distress.

In their reply, filed November 14, 2002, the defendants, in turn, expressly withdraw that portion of their summary judgment motion challenging Martinez's claim of a hostile work environment based on national origin. However, the defendants also contend in their reply that Martinez has apparently withdrawn her claims for disparate treatment and constructive discharge based on national origin by failing to address those sections of the defendants' brief challenging those claims. The court will also leave for consideration below whether Martinez implicitly withdrew any claims. In reply to Martinez's resistance, the defendants reassert their contention that they are entitled to summary judgment on Martinez's retaliation claim, her disability discrimination claim—including claims for failure to accommodate, hostile environment discrimination, and constructive discharge based on disability—and her claim of intentional infliction of emotional distress.

The court heard oral arguments on the defendants' motion for summary judgment on November 27, 2002. At the oral arguments, plaintiff Araceli Martinez was represented by Mark D. Sherinian of Mark D. Sherinian, P.C., in West Des Moines, Iowa, who argued the motion, and James T. Fitzsimmons of Fitzsimmons & Vervaecke Law Firm, P.L.C., in Mason City, Iowa. Defendants Cole Sewell, Tim Nickel, Lori Thomas, and Brad Worrall were represented by Deborah M. Tharnish of Davis, Brown, Koehn, Shors & Roberts, P.C., in Des Moines, Iowa. The court was impressed with the quality and thoroughness of the parties' written and oral arguments and, as mentioned above, with the parties' conscientious reevaluation of their claims and contentions, which narrowed the scope of both the litigation and the summary judgment motion.

At the oral arguments, plaintiff's counsel requested leave to supplement the record with the transcripts of the depositions of one or more witnesses just lately deposed, and the court agreed, provided that the plaintiff e-mailed the transcript or transcripts to the court and the defendant by December 4, 2002, and the defendant was given an opportunity to respond to the supplementary material. The court received a transcript of one deposition by e-mail on December 4, 2002, along with the plaintiff's indications of the most pertinent aspects of the witness's testimony, and the court received the defendant's response, also by e-mail, on December 5, 2002. The court has considered both the supplementary material and the defendant's response to it. Therefore, the defendant's motion for summary judgment is now fully submitted for the court's consideration.

## II. LEGAL ANALYSIS

### A. Standards For Summary Judgment

This court has considered in some detail the standards applicable to motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure in a number of prior decisions. *See, e.g.,*

*Swanson v. Van Otterloo,* 993 F.Supp. 1224, 1230–31 (N.D.Iowa 1998); *Dirks v. J.C. Robinson Seed Co.,* 980 F.Supp. 1303, 1305–07 (N.D.Iowa 1997); *Laird v. Stilwill,* 969 F.Supp. 1167, 1172–74 (N.D.Iowa 1997); *Rural Water Sys. # 1 v. City of Sioux Ctr.,* 967 F.Supp. 1483, 1499–1501 (N.D.Iowa 1997), *aff'd in pertinent part,* 202 F.3d 1035 (8th Cir.), *cert. denied,* 531 U.S. 820, 121 S.Ct. 61, 148 L.Ed.2d 28 (2000); *Tralon Corp. v. Cedarapids, Inc.,* 966 F.Supp. 812, 817–18 (N.D.Iowa 1997), *aff'd,* 205 F.3d 1347, 2000 WL 84400 (8th Cir.2000) (Table op.); *Security State Bank v. Firstar Bank Milwaukee, N.A.,* 965 F.Supp. 1237, 1239–40 (N.D.Iowa 1997); *Lockhart v. Cedar Rapids Community Sch. Dist.,* 963 F.Supp. 805 (N.D.Iowa 1997). The essentials of these standards for present purposes are as follows.

### 1. *Requirements of Rule 56*

Rule 56 itself provides, in pertinent part, as follows:

Rule 56. Summary Judgment

\* \* \* \* \* \*

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

FED. R. CIV. P. 56(a)-(c) (emphasis added). Applying these standards, the trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Don-*

*aldson Co.,* 90 F.3d 1372, 1376–77 (8th Cir.1996); *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman,* 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). As to whether a factual dispute is "material," the Supreme Court has explained, "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Rouse v. Benson,* 193 F.3d 936, 939 (8th Cir.1999); *Beyerbach v. Sears,* 49 F.3d 1324, 1326 (8th Cir.1995); *Hartnagel,* 953 F.2d at 394.

### 2. *The parties' burdens*

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel,* 953 F.2d at 395 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Rose–Maston,* 133 F.3d at 1107; *Reed v. Woodruff County, Ark.,* 7 F.3d 808, 810 (8th Cir.1993). "When a moving party has carried its burden under *Rule* 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. Rather, the party opposing summary judgment is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Rabushka ex. rel. United States v. Crane Co.,* 122

F.3d 559, 562 (8th Cir.1997), *cert. denied,* 523 U.S. 1040, 118 S.Ct. 1336, 140 L.Ed.2d 498 (1998); *McLaughlin v. Esselte Pendaflex Corp.,* 50 F.3d 507, 511 (8th Cir.1995); *Beyerbach,* 49 F.3d at 1325. If a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548; *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.,* 113 F.3d 1484, 1492 (8th Cir.1997). In reviewing the record, the court must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *See Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348; *Quick,* 90 F.3d at 1377 (same).

### 3. Summary judgment in employment discrimination cases

Because this is an employment discrimination case, it is well to remember that the Eighth Circuit Court of Appeals has cautioned that "summary judgment should seldom be used in employment-discrimination cases." *Crawford v. Runyon,* 37 F.3d 1338, 1341 (8th Cir.1994) (citing *Johnson v. Minnesota Historical Soc'y,* 931 F.2d 1239, 1244 (8th Cir.1991); *Hillebrand v. M–Tron Indus., Inc.,* 827 F.2d 363, 364 (8th Cir.1987), *cert. denied,* 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989)); *see also Snow v. Ridgeview Medical Ctr.,* 128 F.3d 1201, 1205 (8th Cir.1997) (citing *Crawford* ); *Helfter v. United Parcel Serv., Inc.,* 115 F.3d 613, 615 (8th Cir. 1997) (quoting *Crawford* ); *Chock v. Northwest Airlines, Inc.,* 113 F.3d 861, 862 (8th Cir.1997) ("We must also keep in mind, as our court has previously cautioned, that summary judgment should be used sparingly in employment discrimination cases," citing *Crawford* ); *Smith v. St. Louis Univ.,* 109 F.3d 1261, 1264 (8th Cir.

1997) (quoting *Crawford* ); *Hardin v. Hussmann Corp.,* 45 F.3d 262 (8th Cir. 1995) ("summary judgments should only be used sparingly in employment discrimination cases," citing *Haglof v. Northwest Rehabilitation, Inc.,* 910 F.2d 492, 495 (8th Cir.1990); *Hillebrand,* 827 F.2d at 364). Summary judgment is appropriate in employment discrimination cases only in "those rare instances where there is no dispute of fact and where there exists only one conclusion." *Johnson,* 931 F.2d at 1244; *see also Webb v. St. Louis Post–Dispatch,* 51 F.3d 147, 148 (8th Cir.1995) (quoting *Johnson,* 931 F.2d at 1244); *Crawford,* 37 F.3d at 1341 (quoting *Johnson,* 931 F.2d at 1244). To put it another way, "[b]ecause discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant." *Crawford,* 37 F.3d at 1341 (holding that there was a genuine issue of material fact precluding summary judgment); *accord Snow,* 128 F.3d at 1205 ("Because discrimination cases often turn on inferences rather than on direct evidence, we are particularly deferential to the nonmovant," citing *Crawford* ); *Webb v. Garelick Mfg. Co.,* 94 F.3d 484, 486 (8th Cir.1996) (citing *Crawford,* 37 F.3d at 1341); *Wooten v. Farmland Foods,* 58 F.3d 382, 385 (8th Cir.1995) (quoting *Crawford,* 37 F.3d at 1341); *Johnson,* 931 F.2d at 1244.

However, the Eighth Circuit Court of Appeals also observed that, "[a]lthough summary judgment should be used sparingly in the context of employment discrimination cases, *Crawford v. Runyon,* 37 F.3d 1338, 1341 (8th Cir.1994), the plaintiff's evidence must go beyond the establishment of a prima facie case to support a reasonable inference regarding the alleged illicit reason for the defendant's action." *Landon v. Northwest Airlines, Inc.,* 72

F.3d 620, 624 (8th Cir.1995) (citing *Reich v. Hoy Shoe Co.*, 32 F.3d 361, 365 (8th Cir.1994)); *accord Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1134 (8th Cir.) (observing that the burden-shifting framework of *McDonnell Douglas* must be used to determine whether summary judgment is appropriate), *cert. denied*, 528 U.S. 818, 120 S.Ct. 59, 145 L.Ed.2d 51 (1999). In *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), the Supreme Court reiterated that " '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.' " *Reeves*, 530 U.S. at 142, 120 S.Ct. 2097 (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).[4] Thus, what the plaintiff's evidence must show, to avoid summary judgment or judgment as a matter of law, is " '1, that the stated reasons were not the real reasons for [the plaintiff's] discharge; and 2, that age [or race, or sex, or other prohibited] discrimination was the real reason for [the plaintiff's] discharge.' " *Id.* at 153, 120 S.Ct. 2097 (quoting the district court's jury instructions as properly stating the law). The Supreme Court clarified in *Reeves* that, to meet this burden, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* at 148, 120 S.Ct. 2097 (emphasis added).

The court will apply these standards to the defendants' motion for summary judgment in this case.

---

4. In *Reeves,* the Supreme Court was considering a motion for judgment as a matter of law *after* a jury trial, but the Supreme Court also reiterated that "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.' " *Reeves,*

### B. Scope Of Martinez's Withdrawal Of Claims

The first question that the court must answer is precisely what claims Martinez has withdrawn, as the answer to that question will determine not only what claims are still at issue in this litigation generally, but what portions of the defendants' motion for summary judgment must be resolved. The question arises here both as to the scope of Martinez's *express* withdrawal of her "claim of sexual discrimination," and as to whether or not Martinez *implicitly* withdrew her claims of disparate treatment and constructive discharge based on national origin, as the defendants contend.

### 1. Scope of the express withdrawal

■ In her resistance to the defendants' summary judgment motion, Martinez expressly withdrew certain claims, as follows:

Ms. Martinez has authorized her attorneys to withdraw her claim of sexual discrimination in this case. Nonetheless, the Plaintiff believes that the conduct exhibited by Mr. Worrall in regard to bathroom breaks and other employees in regard to profanity should still be considered as part of the hostile work environment based upon Ms. Martinez's national origin.

Plaintiff's Brief at 4. The court concludes, readily enough, that Martinez's express withdrawal of her "umbrella" claim of "sexual discrimination" includes her "constituent" claims of hostile environment harassment, disparate treatment, and constructive discharge based on sex. More

---

530 U.S. at 150, 120 S.Ct. 2097 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Therefore, the standards articulated in *Reeves* are applicable to the present motion for summary judgment.

specifically, it follows from a reading of Count I of Martinez's Amended Complaint that withdrawal of the "claim of sexual discrimination" was not intended to mean withdrawal only of a "disparate treatment" claim, for example, because Count I of the Amended Complaint pleads in a single count "a hostile work environment," "disparate treatment," and "actua[l] or constructiv[e] discharg[e] ... because of [Martinez's] sex ...," all in violation of Title VII. *See* Amended Complaint, Count I, ¶¶ 14–16.[5] Moreover, as the Supreme Court explained some time ago in the seminal case recognizing sexually hostile environment harassment as actionable under Title VII, such a claim is a form of "sexual discrimination." *See Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 66, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) ("Since the Guidelines were issued [in 1980 by the EEOC], courts have uniformly held, and we agree, that a plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment."). Finally, this court has found nothing in the remainder of Martinez's brief that could be construed as argument that any of the "constituent" claims of "hostile environment harassment," "disparate treatment," and "constructive discharge" was intended to remain viable notwithstanding withdrawal of the "umbrella" claim of "sexual discrimination."

However, the defendants have construed Martinez's withdrawal of her "claim of sexual discrimination" as also including withdrawal of her claim of retaliation based on complaints of sexual harassment. This reading does not necessarily follow, either from Martinez's Amended Complaint or Title VII's statutory language. First, Martinez asserted retaliation in violation of Title VII in a separate count, Count II, from her claim of discrimination in viola-

tion of Title VII in Count I. *Compare* Amended Complaint, Count I (alleging "discrimination" specifically in the form of "hostile work environment," "disparate treatment," and "constructive discharge," based on sex or national origin), *with* Count II (alleging "retaliation" for "opposition to discrimination"). Moreover, "retaliation" is prohibited by a separate section of Title VII from the section defining other unlawful employment practices, 42 U.S.C. § 2000e–3(a) rather than 42 U.S.C. § 2000e–2(a). Thus, the court must consider further whether Martinez intended to withdraw her claim of retaliation for opposing sexual discrimination.

It appears that Martinez reserved factual allegations originally intended to support her "sexual discrimination" claims only to support her claim of a hostile work environment based upon her national origin. *See* Plaintiff's Brief at 4 (as quoted above). However, the court can find no clear suggestion in the portion of Martinez's brief resisting summary judgment on her retaliation claim that Martinez was only relying on alleged incidents of retaliation for opposing national origin discrimination as generating the necessary genuine issues of material fact to allow the claim to go to the jury. *See id.* at 10–13. Rather, Martinez identifies her complaints about "discrimination," both her formal one to the Iowa Civil Rights Commission on February 15, 2000, and informal ones to company representatives in November 1999, January 2000, and March 2000, as the "protected activity" prompting retaliation. *See id.* Also, the discrimination referred to in the formal administrative charge is both "national origin" and "sex," although the narrative explanation of the nature of the discrimination appears to point to discrimination based on physical impairment and national origin, rather

---

**5.** This count pleads the same claims as to "national origin." *See id.*

than sex. *See* Amended Complaint, Exhibit A; *see also* Defendant's Appendix at 1–3. Finally, when the court asked Martinez's counsel directly at the oral arguments whether Martinez intended her withdrawal of her "claim of sexual discrimination" to include her claim of retaliation for complaining about sexual harassment, Martinez's counsel stated that the retaliation claim was based on retaliation for filing the charge of discrimination with the Iowa Civil Rights Commission, not for complaining about specific kinds of discrimination.

The court concludes that, in an abundance of caution, it should consider whether Martinez's retaliation claim should go to the jury on the basis that the protected activity allegedly involved complaints about "discrimination," including sexual discrimination as well as national origin and disability discrimination.

### 2. *Was there an implicit withdrawal of some claims?*

▮ The defendants also contend that Martinez *implicitly* withdrew her claims of disparate treatment and constructive discharge based on national origin by failing to address those sections of the defendants' brief in support of their summary judgment motion challenging those claims. When asked at oral arguments whether Martinez intended to withdraw disparate treatment and constructive discharge claims based on national origin, Martinez's counsel asserted that Martinez had addressed those claims "from·a factual standpoint" in her resistance, even· if she had not expressly briefed them under appropriate headings. The court then confirmed that this meant that Martinez *did not* intend to withdraw those claims. Nevertheless, the court finds that the defendants' contention that these claims were implicitly withdrawn can be addressed by application of the standards for summary judgment outlined above.

In Sections IV and V of their brief, the defendants met their "initial responsibility" under Rule 56 "of informing the district court of the basis for [their] motion and identifying those portions of the record which show lack of a genuine issue" as to Martinez's national origin claims of disparate treatment and constructive discharge, respectively. *See Hartnagel,* 953 F.2d at 395 (citing *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548); *see also ·Rose–Maston,* 133 F.3d at 1107; *Reed,* 7 F.3d at 810. Determination of whether Martinez then met her burden under Rule 56(e)— that is, her burden to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial," *see* FED. R. CIV. P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Rabushka,* 122 F.3d at 562; *McLaughlin,* 50 F.3d at 511; *Beyerbach,* 49 F.3d at 1325—is complicated, in part, by the fact that Martinez does not address issues in her brief in the same order or under the same rubric in which they were raised by the defendants. However, the proper question, as her counsel's contentions at oral arguments suggests, is whether Martinez points to record evidence in support of her claims sufficient to generate a genuine issue of material fact on those claims, not how and where in her brief she does that.

Even so, the court finds that Martinez has not met her burden with regard to her claim of disparate treatment because of national origin. Indeed, nowhere in her brief does the court find that Martinez has asserted that there is record evidence that generates a genuine issue of material fact that she was treated differently than similarly situated non-Mexicans, although she has marshaled evidence that she asserts supports her claims of harassment based on national origin and retaliation for complaining about national origin harassment.

*See* Plaintiff's Brief at 4–7 (discussing hostile environment harassment based on national origin) & 10–13 (discussing retaliation). Moreover, even her counsel's oral argument in support of her claim of disparate treatment based on national origin did not distinguish that claim from her claim of a hostile environment based on national origin, because the only evidence of adverse employment action that she identified in support of the disparate treatment claim was evidence of instances of alleged harassment and ridicule. Certainly, Martinez has not identified any evidence to support a "classic" disparate treatment claim, such as failure to hire, transfer, promote, or denial of specific benefits, job assignments, or conditions of employment available to similarly situated persons who were not Mexican. Because Martinez has not made the necessary designation of evidence of disparate treatment because of national origin, the defendants are "entitled to judgment as a matter of law" on that claim. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548; *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.,* 113 F.3d at 1492.

On the other hand, the court finds that Martinez has argued, and marshaled evidence in support of her argument, that there are genuine issues of material fact as to whether or not she was constructively discharged because of her national origin. The record evidence to which she specifically points in support of her contention that she was constructively discharged includes citations to record evidence that harassment because of her national origin—including, for example, incidents in which she was called "lazy," which she elsewhere contends is a stereo-type for Mexican–Americans—made her workplace intolerable. *See, e.g.,* Plaintiff's Brief at 20. Moreover, implicit in her arguments that she was subjected to a hostile work environment based on national origin is a contention that the hostile work environ-

ment was sufficiently intolerable to cause her constructive discharge.

Thus, while the court agrees that Martinez has implicitly withdrawn her claim of disparate treatment based on national origin, or has failed to carry her burden in resistance to a motion for summary judgment on that claim, by failing to identify evidence in support of that claim, in an abundance of caution, the court concludes that Martinez has at least attempted to resist the defendants' motion for summary judgment on her claim that harassment because of her national origin ultimately caused her constructive discharge.

The court turns, next, to the claims still at issue in this litigation upon which the defendants are still seeking summary judgment.

### C. Title VII Claims

Because Martinez has expressly withdrawn her "sexual discrimination" claims, the court has found that Martinez implicitly withdrew or failed to carry her burden at summary judgment on her claim of disparate treatment based on national origin, and the defendants have withdrawn their motion for summary judgment on Martinez's claim of a hostile work environment based on her national origin, only two issues related to Title VII claims are now presented for consideration on summary judgment: (1) whether there are genuine issues of material fact on Martinez's Title VII retaliation claim; and (2) whether there are genuine issues of material fact that harassment based on national origin in violation of Title VII caused Martinez's constructive discharge. The court will consider these issues in turn.

### 1. Retaliation

#### a. Arguments of the parties

The defendants contend that they are entitled to summary judgment on Mar-

tinez's Title VII retaliation claims, because Martinez has failed to generate a *prima facie* case of retaliation and, even if she has, she has failed to present evidence generating a genuine issue of material fact that the defendants' stated reasons for their actions are a pretext for retaliation. Somewhat more specifically, the defendants argue that Martinez has not established that she engaged in any protected activity, because they contend that it is undisputed that Martinez never brought any alleged discrimination to the attention of any supervisor at Cole Sewell. Instead, on the only occasion that she approached Ms. Thomas with a complaint, it was to report that co-workers were using profanity, but Martinez herself admits that profanity was used toward and among both men and women. Therefore, defendants argue, Martinez could not have had a reasonable belief that use of profanity was conduct that violated Title VII. Although the defendants concede, albeit only for the purposes of summary judgment, that Martinez's filing of an administrative complaint with the Iowa Civil Rights Commission constituted protected activity, they contend that Martinez nevertheless has not generated a genuine issue of material fact that she sustained any adverse employment action as a result of that filing. Rather, they contend that her allegations are that nothing changed after she filed her administrative charge and there is no evidence of additional, different, or more odious duties imposed upon her after the filing of the charge. They argue, further, that warnings for absenteeism did not cause a material disadvantage to Martinez, even supposing that they were related to her filing of a charge of discrimination, and that ostracism by co-workers or supervisors is insufficient, standing alone, to support her claim. Nor is there any causal connection, defendants contend, between any protected activity and any adverse action, because of the time lag between the filing of Martinez's administrative charge, or any other complaints about harassment, and the purportedly retaliatory warnings for absenteeism. Cole Sewell also contends that it cannot be held liable for any adverse conduct by co-workers in retaliation for Martinez's complaints about discrimination. Finally, the defendants contend that Martinez cannot show that any warnings or disciplinary actions for absenteeism were a pretext for retaliation, because those actions were appropriate in light of the company's absenteeism policy and Martinez's record of absences.

Martinez, however, argues that there is more than enough evidence to permit her retaliation claim to go to the jury. She contends that protected activity includes both formal and informal complaints about discrimination, and that she made both kinds of complaints. She also contends that there are numerous incidents of adverse employment action following on the heels of her protected activity, including delivery of her paycheck later than delivery of paychecks to other employees; misinforming her of the time to start working; delays in giving her work; and constant harassment from co-workers, for which Martinez contends a number of courts have recently held employers liable. Contrary to the defendants' contentions, she contends that adverse actions and harassment followed closely in time after her complaints and administrative charge of harassment and that the harassment by co-workers was condoned by supervisors, when they informed line employees that their conduct did not constitute "harassment," or by failing to take action when harassing epithets or comments were made to Martinez within earshot of supervisors. As to pretext, not only does Martinez disagree with the defendants' contentions that all of their actions were justified by their absenteeism policy, but she argues that there is record evidence that

other employees acknowledged that Martinez was unfairly criticized for being late or absent when other employees were not.

In reply, the defendants contend that supposed incidents of co-worker harassment in retaliation for complaints about harassment were not reported to or observed by supervisors, and that the allegedly harassing comments have nothing inherently to do with national origin. They also contend that Martinez has still failed to demonstrate that there is evidence of a causal connection between any complaints about harassment and any alleged retaliatory acts, because Martinez has cited no record evidence that supervisors ever condoned any retaliatory harassment by co-workers. Finally, the defendants argue that the only evidence of any possible adverse employment action that Martinez experienced was discipline for absenteeism, but that the company's absenteeism policy and Martinez's record of absenteeism demonstrate that disciplinary action was not just a pretext for retaliation.

#### b. *Applicable law*

As noted above, retaliation is prohibited under Title VII by 42 U.S.C. § 2000e–3(a), which prohibits an employer from "discriminat[ing] against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a); *see also Clark County School Dist. v. Breeden,* 532 U.S. 268, 269, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (*per curiam*). In this case, Martinez specifically pleaded "opposition" to harassment as the basis for her retaliation claim, although, in her resistance to the defendants' summary judgment motion, she also identified "protected activity" in which she engaged as including "making a charge" of discrimination.

On a motion for summary judgment, in the absence of direct evidence of retaliation, courts in this circuit "apply the familiar *McDonnell Douglas* three-part burden shifting analysis" to a retaliation claim. *See Thorn v. Amalgamated Transit Union,* 305 F.3d 826, 830 (8th Cir.2002) (citing *Buettner v. Arch Coal Sales Co.,* 216 F.3d 707, 713–14 (8th Cir.2000), *cert. denied,* 531 U.S. 1077, 121 S.Ct. 773, 148 L.Ed.2d 672 (2001)). Thus,

> [a]bsent direct evidence of discrimination, we ask first whether plaintiff presented a prima facie case of reprisal discrimination, next whether defendant rebutted the resulting presumption of discrimination by advancing a legitimate reason for its challenged behavior, and finally whether plaintiff refuted defendant's legitimate reason with sufficient evidence of pretext.

*Thorn,* 305 F.3d at 830. The steps in this analysis warrant some further elucidation.

The plaintiff's *prima facie* case "requires a showing [1] that the employee engaged in some form of protected activity, [2] that the employee was subject to adverse employment action and [3] that the adverse action was causally connected to the protected activity." *Woodland v. Joseph T. Ryerson & Son, Inc.,* 302 F.3d 839, 844 (8th Cir.2002). As to the first element, although either "opposition to" or "making a charge" of discrimination constitutes "protected activity" under § 2000e–3(a), the Supreme Court has explained that the "protected activity" element of a *prima facie* case (or claim) of retaliation also requires that "a reasonable person could have believed [that the discriminatory conduct relied upon] violated Title VII's standard." *Breeden,* 532 U.S. at 271, 121 S.Ct. 1508. Thus, where the plaintiff's complaints about discrimination involved complaints about harassment, the court must consider what constitutes actionable

harassment under Title VII, and whether a reasonable person could have believed that the conduct about which the plaintiff complained violated Title VII's standards. *See id.*

■■■ As to the "adverse employment action" element, " '[c]hanges in duties or working conditions that cause no materially significant disadvantage ... are insufficient to establish the adverse conduct required to make a prima facie case.' " *Woodland,* 302 F.3d at 845 (quoting *Ledergerber v. Stangler,* 122 F.3d 1142, 1144 (8th Cir.1997)). Moreover, " '[n]ot everything that makes an employee unhappy is an actionable adverse action.' " *Id.* (quoting *Montandon v. Farmland Indus., Inc.,* 116 F.3d 355, 359–360 (8th Cir.1997)). Indeed, because "Title VII is not 'a general civility code for the American workplace,' ... in employer retaliation cases, 'ostracism and rudeness by supervisors and co-workers do not rise to the level of an adverse employment action.' " *Thorn,* 305 F.3d at 831 (quoting, first, *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998), and, second, *Gagnon v. Sprint Corp.,* 284 F.3d 839, 850 (8th Cir.2002)). On the other hand, harassment that is sufficiently "severe or pervasive" itself alters the conditions of the employee's employment sufficiently to constitute "adverse employment action." *See, e.g., Breeden,* 532 U.S. at 270, 121 S.Ct. 1508; *Meritor,* 477 U.S. at 66, 106 S.Ct. 2399.

■■■ As to the "causal connection" element of the plaintiff's *prima facie* case, " '[g]enerally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation.' " *Smith v. Allen Health Sys., Inc.,* 302 F.3d 827, 832 (8th Cir.2002) (quoting *Kiel v. Select Artificials, Inc.,* 169 F.3d 1131, 1136 (8th Cir.1999) (*en banc*)). However, "[a] pattern of adverse actions that occur[s] just after protected activity can supply the extra quantum of evidence to satisfy the causation element." *Id.* In *Smith,* the Eighth Circuit Court of Appeals attempted to rationalize its cases holding that, "even without a pattern, ... the timing of one incident of adverse employment action following protected activity sufficed to establish causal connection," with cases suggesting that a mere coincidence of timing is not enough. *See id.* (citing cases). The court's analysis was as follows:

> Although it is difficult to find a principle neatly explaining why each of our cases held temporal connection was or was not sufficient to satisfy the causation requirement, *it appears that the length of time between protected activity and adverse action is important.* The Supreme Court has said: "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close." *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (per curiam) (internal quotation marks omitted). For instance in *Kipp [v. Missouri Highway & Transp. Comm'n],* 280 F.3d [893,] 897 [ (8th Cir. 2002) ], we said that "the interval of two months between the complaint and Ms. Kipp's termination so dilutes any inference of causation that we are constrained to hold as a matter of law that the temporal connection could not justify a finding in Ms. Kipp's favor on the matter of causal link." By contrast, we said in *Sprenger [v. Federal Home Loan Bank,* 253 F.3d 1106 (8th Cir.2001),] that proximity of a "matter of weeks" between disclosure of a potentially disabling condition and adverse employment

action was sufficient to complete a prima facie case of discrimination. 253 F.3d at 1113–14. In this case, Smith's family leave began on January 1 and Allen discharged her on January 14. These two events are extremely close in time and we conclude that under our precedent this is sufficient, but barely so, to establish causation, completing Smith's prima facie case. This holding is consistent with the overarching philosophy of the *McDonnell Douglas* system of proof, which requires only a minimal showing before requiring the employer to explain its actions. *See generally Sprenger,* 253 F.3d at 1111.

*Smith,* 302 F.3d at 833 (emphasis added).

 As the Eighth Circuit Court of Appeals also explained in *Smith,* "the *McDonnell Douglas* battle is only begun with the prima facie case." *Smith,* 302 F.3d at 833. In addition, "[i]f the employer comes forward with evidence of a legitimate, nondiscriminatory reason for its treatment of the employee, the employee must then point to some evidence that the employer's proffered reason is pretextual." *Id.* To make the necessary showing, the plaintiff is "obliged to present evidence that (1) creates a question of fact as to whether [the employer's] proffered reason was pretextual and (2) creates a reasonable inference that [the employer] acted in retaliation." *Id.; see also Reeves,* 530 U.S. at 153, 120 S.Ct. 2097 (what the plaintiff's evidence must show, to avoid summary judgment or judgment as a matter of law, is " '1, that the stated reasons were not the real reasons for [the plaintiff's] discharge; and 2, that age [or race, or sex, or other prohibited] discrimination was the real reason for [the plaintiff's] discharge.") (quoting the district court's jury instructions as properly stating the law). To carry the burden of showing pretext at summary judgment, Martinez will be required to show, or at least generate a genuine issue of material fact, that the

defendants' justification for their conduct is "unworthy of credence." *Id.* at 833–34 (citing *Reeves,* 530 U.S. at 143, 120 S.Ct. 2097). While a *prima facie* case may be strong enough, standing alone, to make this showing, that is not always the case, and unlike the plaintiff's *prima facie* case, the evidence purportedly demonstrating pretext is " 'viewed in light of the employer's justification.' " *Id.* at 835 (quoting *Sprenger,* 253 F.3d at 1111). Moreover, "[e]vidence that the employer had been concerned about a problem before the employee engaged in the protected activity undercuts the significance of the temporal proximity," and indeed, may explain a causal connection showing that any temporal proximity is *not* the result of retaliatory motive. *Id.* On the other hand, "[a]n employee can prove pretext by showing the employer meted out more lenient treatment to similarly situated employees who were not in the protected class, or . . . did not engage in protected activity," although the plaintiff must "prove that the compared employees were similarly situated in all relevant aspects." *Id.* at 835. Similarly, " '[s]ubstantial changes over time in the employer's proffered reason for its employment decision support a finding of pretext,' " *id.* (quoting *Kobrin v. University of Minnesota,* 34 F.3d 698, 703 (8th Cir.1994)), as may deviation from a policy upon which the employer relies as justifying its treatment of the employee. *Id.*

### c. The record in light of applicable law

 **i. Martinez's prima facie case of retaliation.** Determination of whether or not Martinez has generated the necessary genuine issues of material fact to allow her retaliation claim to go to the jury begins with consideration of her *prima facie* case. As to the first element of that *prima facie* case—"that the employee engaged in some form of protected

activity," *see Woodland,* 302 F.3d at 844—the court rejects the defendants' contention that Martinez has not generated any genuine issues of material fact that she engaged in "protected activity." The defendants themselves concede that Martinez made complaints to company officials on March 3, 2000, although they apparently contend that Martinez did not provide sufficient information about the nature of the harassment or the identity of the harassers for that complaint to constitute protected activity. On the other hand, Martinez contends that she described foul language and repeated taunting by co-workers and supervisors in her complaint to Lori Thomas on March 3, 2000. Although the court agrees that no reasonable person could believe that just "foul language" constituted harassment under Title VII, and thus, such a complaint would not constitute "protected activity," *see Breeden,* 532 U.S. at 271, 121 S.Ct. 1508, a report that Martinez was being "taunted" may be an entirely different matter.

 As the Supreme Court explained in *Breeden,* whether a reasonable person could believe that she was reporting harassment depends upon whether or not a reasonable person could believe that the conduct could satisfy Title VII's definition of actionable harassment. In *Breeden,* the Supreme Court explained Title VII's standards for sexual harassment as follows:

Title VII forbids actions taken on the basis of sex that "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e–2(a)(1). Just three Terms ago, we reiterated, what was plain from our previous decisions, that sexual harassment is actionable under Title VII only if it is "so 'severe or pervasive' as to 'alter the conditions of [the victim's] em-

ployment and create an abusive working environment.' " *Faragher v. Boca Raton,* 524 U.S. 775, 786, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (quoting *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (some internal quotation marks omitted)). *See also Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 752, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) (Only harassing conduct that is "severe or pervasive" can produce a "constructive alteratio[n] in the terms or conditions of employment"); *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (Title VII "forbids only behavior so objectively offensive as to alter the 'conditions' of the victim's employment"). Workplace conduct is not measured in isolation; instead, "whether an environment is sufficiently hostile or abusive" must be judged "by 'looking at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' " *Faragher v. Boca Raton, supra,* at 787–788, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (quoting *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). Hence, "[a] recurring point in [our] opinions is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.' " *Faragher v. Boca Raton, supra,* at 788, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (citation and internal quotation marks omitted).

*Breeden,* 532 U.S. at 270–71, 121 S.Ct. 1508. Our Circuit Court of Appeals has applied essentially identical "severe or per-

vasive" standards to determine whether an environment was sufficiently *racially* hostile. *See, e.g., Dowd v. United Steelworkers of America, Local No. 286,* 253 F.3d 1093, 1101 (8th Cir.2001); *Robinson v. Valmont Indus.,* 238 F.3d 1045, 1047 (8th Cir.2001); *Ross v. Douglas County, Nebraska,* 234 F.3d 391, 396 (8th Cir.2000); *Carter v. Chrysler Corp.,* 173 F.3d 693, 700 (8th Cir.1999). This court can find no reasoned basis for applying a different standard to a claim of a hostile environment based on national origin where the statutory basis for all of the harassment claims refers to discrimination on the basis of race, sex, and national origin without distinction. *See* 42 U.S.C. § 2000e–2(a). Thus, if harassment or "taunting" is sufficiently "severe or pervasive," reporting such harassment may constitute the necessary "protected activity" to satisfy the first element of Martinez's *prima facie* case of retaliation.

 Elsewhere in her resistance, Martinez identifies the "taunting" to which she was subjected as including comments that she was "lazy" and epithets like "spider," "mummy," "shitty Mexican" or "Mexican shit," and "wetback," and that such "taunting" was very frequent, almost every time she was on or near the production line. The frequency and patently derogatory content of some of these taunts—specifically, "shitty Mexican" or "Mexican shit" and "wetback," and perhaps to a lesser extent, "lazy" as a stereotype for Mexican–Americans—to a person of Mexican origin cannot be ignored. *See id.* (including frequency and offensiveness as part of the calculus of whether conduct is sufficiently "severe or pervasive"). Thus, it appears that Martinez has generated at least a genuine issue of material fact that the informal complaint of March 3, 2000, constituted "protected activity." In addition, the defendants concede, as they must, that Martinez's formal administrative charge of discrimination to the Iowa Civil Rights Commission was "protected activity." *See* 42 U.S.C. § 2000e–3(a) (prohibiting retaliatory discrimination for "making a charge" of discrimination). Therefore, Martinez has satisfied or generated genuine issues of material fact as to the "protected activity" element of her *prima facie* case of Title VII retaliation.

 The court also concludes that Martinez has generated genuine issues of material fact that she suffered "adverse employment action," as required by the second element of her *prima facie* case. *See Woodland,* 302 F.3d at 844 (the second element is "that the employee was subject to adverse employment action"). This is so, despite the court's agreement with the defendants that mere "ostracism or rudeness," by either co-workers or supervisors, standing alone, would not constitute the necessary adverse employment action, *see Thorn,* 305 F.3d at 831, and that Martinez does not appear to have cited any evidence of any "changes in duties or working conditions that cause[d] ... materially significant disadvantage." *See Woodland,* 302 F.3d at 845. What Martinez has pointed to is, first, a legally cognizable level of "severe or pervasive" national origin harassment, including the frequent use of the epithets identified above, that itself sufficiently altered the conditions of her employment to constitute "adverse employment action" to satisfy this element of her retaliation claim. *See, e.g., Breeden,* 532 U.S. at 270, 121 S.Ct. 1508; *Meritor,* 477 U.S. at 66, 106 S.Ct. 2399. Furthermore, Martinez has not alleged that rudeness and ostracism *standing alone* constituted adverse employment action, but that such conduct was in conjunction with other harassment. Whether harassment is legally cognizable, it should be remembered, depends in part on the cumulative effect of the conduct, not on the offensiveness of each individual comment. *See Breeden,*

532 U.S. at 270, 121 S.Ct. 1508 ("Workplace conduct is not measured in isolation; instead, 'whether an environment is sufficiently hostile or abusive' must be judged by "looking at all the circumstances." ' ").

■ The court next concludes that Martinez has generated genuine issues of material fact that there is sufficient "causal connection" between her protected activity and adverse employment action to suggest retaliation, as required by the third element of her *prima facie* case. *See Woodland*, 302 F.3d at 844. The evidence to which Martinez points suggests that there was "[a] pattern of adverse actions that occur[ed] just after protected activity." *See Smith*, 302 F.3d at 832. Martinez's administrative charge was filed February 15, 2000, and her informal complaint to Ms. Thomas occurred on March 3, 2000. Martinez has both alleged and pointed to evidence suggesting that harassment toward her intensified after March 3, 2000. Moreover, there does not appear to be any record evidence of official warnings or disciplinary action for absenteeism or tardiness toward Martinez until February or March of 2000, starting approximately the same time that Martinez filed her administrative charge of discrimination, even though the defendants now contend that Martinez's absenteeism was a problem throughout her employment. Although "[e]vidence that the employer had been concerned about a problem before the employee engaged in the protected activity undercuts the significance of the temporal proximity," and indeed, may explain a causal connection showing that any temporal proximity is *not* the result of retaliatory motive, *see Smith*, 302 F.3d at 835, here, the evidence reasonably suggests that, whatever "concerns" the employer may have had about absenteeism before February or March of 2000, it wasn't until after Martinez began complaining about harassment that the employer decided to act upon its concerns

about Martinez's absenteeism, which does generate an inference of retaliatory intent. *Id.* All of this evidence, taken together, is sufficient, at least at the summary judgment stage of the proceedings, to find that Martinez's *prima facie* case survives the defendants' summary judgment motion.

■ *ii. The shifting of burdens.* Turning from Martinez's *prima facie* case to the remaining parts of "the *McDonnell Douglas* battle," *see Smith*, 302 F.3d at 830, the court has little trouble concluding that the defendants have identified a legitimate reason for giving Martinez warnings about absenteeism, although they have not necessarily explained away the timing of those warnings to dispel all inferences of retaliatory intent. The court also agrees with the defendants that the slim record evidence upon which Martinez relies as demonstrating that she was treated differently than other employees as to absenteeism, offered to support an inference of pretext, *see, e.g., Smith*, 302 F.3d at 835 (considering the way in which punishment is meted out and whether the employer follows its own policy as supporting an inference of pretext), supports that contention here barely or not at all. *See* Plaintiff's Appendix at 13 (deposition testimony of Jessica Dokum to the effect that on one occasion, she corrected a manager's mistaken belief that Martinez had not attended a meeting); *id.* at 131 (e-mails concerning whether Martinez could be docked pay for ten minutes she was tardy after returning from a doctor's appointment, indicating that, in that instance, she would *not* be so docked).

■ However, discipline for absenteeism is not the "adverse employment action" upon which Martinez solely—or even substantially—relies. The defendants have not attempted to offer any legitimate reason for allegedly retaliatory taunting of Martinez by co-workers with offensive epi-

thets related to her national origin, and the court doubts that there could be any legitimate reason for such conduct. What the defendants have attempted to do with this kind of evidence of adverse, retaliatory action is to explain that Cole Sewell and its supervisors were unaware of it and never condoned it, such that the company cannot be held liable for it as retaliatory action by the company. *See, e.g., Richardson v. New York State Dep't of Correctional Serv.*, 180 F.3d at 426, 446 (2d Cir.1999) (holding that "[a]n employer [can] be held accountable for allowing retaliatory co-worker harassment to occur [if the employer] fails to act or stop it"). Martinez, however, has presented evidence that at least some of the retaliatory harassment was either witnessed by, or meted out by, supervisors.

 A claim of retaliation under Title VII that is subject to the *McDonnell Douglas* burden-shifting analysis depends just as completely on the inferences to be drawn from the evidence as a disparate treatment or hostile environment claim. *See Thorn*, 305 F.3d at 830 ("apply[ing] the familiar *McDonnell Douglas* three-part burden shifting analysis" to a retaliation claim, citing *Buettner*, 216 F.3d at 713–14). Therefore, the court concludes that summary judgment on such a claim should be granted just as seldom and sparingly as it is on any other employment discrimination claim. *See, e.g., Crawford*, 37 F.3d at 1341. Moreover, the court concludes that this is not one of "those rare instances where there is no dispute of fact and where there exists only one conclusion," such that summary judgment is appropriate on Martinez's Title VII retaliation claim. *Johnson*, 931 F.2d at 1244. Conse-

quently, the court concludes that the defendants are not entitled to summary judgment on Martinez's claim of retaliation in violation of Title VII.

### 2. Constructive discharge

#### a. Arguments of the parties

 The other Title VII "claim" still at issue on summary judgment is Martinez's contention that she was constructively discharged.[6] Although the defendants have withdrawn their motion for summary judgment as to Martinez's claim of a hostile work environment based on national origin, they nevertheless contend that Martinez cannot generate a genuine issue of material fact that her working conditions were so intolerable as to cause her constructive discharge. They point out that, to establish a constructive discharge, a plaintiff must do more than simply show a violation of Title VII. They also contend that there is no evidence of an intent to force Martinez to quit. The court concluded, above, that Martinez had resisted these contentions by pointing to evidence that she believes supports her constructive discharge claim by showing that her workplace was made "intolerable," including evidence of harassment, such as incidents in which she was called "lazy," which she elsewhere contends is a stereo-type for Mexican–Americans. *See, e.g.,* Plaintiff's Brief at 20.

#### b. Applicable law

This court recently summarized the requirements for proof of constructive discharge, as follows:

> To constitute a constructive discharge, a plaintiff must show more than just a

---

**6.** In the court's view, "constructive discharge" is not a separate *claim* under Title VII, but a *contention* regarding the effects of alleged discrimination and available relief, notwithstanding that proof of "constructive

discharge" requires proof of specific elements in much the same way as the principal discrimination claim requires proof of specific elements.

Title VII violation by her employer. *Phillips v. Taco Bell Corp.*, 156 F.3d 884, 890 (8th Cir.1998). A constructive discharge occurs when an employer deliberately renders the employee's working conditions intolerable and thus forces him to quit his job. *Klein v. McGowan*, 198 F.3d 705, 709 (8th Cir. 1999) (citing *Kimzey*, 107 F.3d at 574); *see also Johnson v. Runyon*, 137 F.3d 1081, 1083 (8th Cir.) (internal quotations omitted), *cert. denied*, 525 U.S. 916, 119 S.Ct. 264, 142 L.Ed.2d 217 (1998) ("A constructive discharge occurs when an employer renders the employee's working conditions intolerable, forcing the employee to quit."); *Summit v. S–B Power Tool*, 121 F.3d 416, 421 (8th Cir. 1997) (internal quotations omitted), *cert. denied*, 523 U.S. 1004, 118 S.Ct. 1185, 140 L.Ed.2d 316 (1998) (citing same). The intent element is satisfied by a demonstration that quitting was "a reasonably foreseeable consequence of the employer's discriminatory actions." *Id.* The employee has an obligation to act reasonably by not assuming the worst and not jumping to conclusions too quickly. *See Howard v. Burns Bros., Inc.*, 149 F.3d 835, 841–42 (8th Cir.1998).

" '[I]ntolerability of working conditions is judged by an objective standard, not the [employee's] subjective feelings.' " *Gartman v. Gencorp, Inc.*, 120 F.3d 127, 130 (8th Cir.1997) (quoting *Allen v. Bridgestone/Firestone, Inc.*, 81 F.3d 793, 796 (8th Cir.1996)). First, the conditions created by the employer must be such that a reasonable person would find them intolerable. *See Gartman*, 120 F.3d at 130; *Tidwell v. Meyer's Bakeries, Inc.*, 93 F.3d 490, 494 (8th Cir.1996); *Parrish v. Immanuel Medical Ctr.*, 92 F.3d 727, 732 (8th Cir.1996); *Allen*, 81 F.3d at 796; *Bradford v. Norfolk S. Corp.*, 54 F.3d 1412, 1420 (8th Cir.1995); *Smith*, 38 F.3d at 1460; *Hukkanen v. International Union of Operat-*

*ing Eng'rs, Hoisting & Portable Local No. 101*, 3 F.3d 281, 284 (8th Cir.1993). Second, the employer's actions "must have been deliberate, that is, they 'must have been taken with the intention of forcing the employee to quit.' " *Delph*, 130 F.3d at 354 (quoting *Johnson v. Bunny Bread Co.*, 646 F.2d 1250, 1256 (8th Cir.1981)); *Gartman*, 120 F.3d at 130; *Tidwell*, 93 F.3d at 494; *Parrish*, 92 F.3d at 732; *Allen*, 81 F.3d at 796; *Smith*, 38 F.3d at 1461; *Hukkanen*, 3 F.3d at 284. The Eighth Circuit Court of Appeals has explained that, "in the absence of conscious intent . . ., the intention element may nevertheless be proved with a showing that the employee's 'resignation was a reasonably foreseeable consequence' of the [discriminatory or retaliatory conduct]." *Delph*, 130 F.3d at 354 (quoting *Hukkanen*, 3 F.3d at 285); *Gartman*, 120 F.3d at 130 (also citing *Hukkanen* ). Finally, "to act reasonably, an employee has an obligation not to assume the worst and not to jump to conclusions too quickly"; therefore, "[a]n employee who quits without giving his employer a reasonable chance to work out a problem has not been constructively discharged." *West v. Marion Merrell Dow, Inc.*, 54 F.3d 493, 498 (8th Cir.1995).

The Eighth Circuit Court of Appeals has affirmed constructive discharge verdicts, emphasizing the employee's lack of recourse within the employer's organization. For example, in *Delph v. Dr. Pepper Bottling Co.*, 130 F.3d 349, 356–57 (8th Cir.1997), the Eighth Circuit Court of Appeals upheld a constructive discharge verdict based on a hostile environment. The *Delph* court held that the hostile environment was bad enough to constitute constructive discharge, because the harassment—racial slurs—came from the plaintiff's supervisor and the offending language was not only

used in the plaintiff's presence, but was directed at him. *Id.* at 356. In *Kimzey v. Wal–Mart Stores, Inc.,* 107 F.3d 568, 574 (8th Cir.1997), the Eighth Circuit Court of Appeals emphasized management's indifference to the employee's complaints of hostile environment in affirming the plaintiff's verdict on constructive discharge: "If an employee quits because she reasonably believes there is no chance for fair treatment, there has been a constructive discharge." *Id.* at 574.

*Baker v. John Morrell & Co.,* 220 F.Supp.2d 1000, 1021–23 (N.D.Iowa 2002).

#### c. The record in light of applicable law

 For many of the same reasons that the court found above that Martinez has generated genuine issues of material fact on her retaliation claim, the court concludes that she has also generated genuine issues of material fact on her contention that the hostile work environment to which she was subjected based on national origin was so intolerable as to force her to quit. Even judging "intolerability" by an objective standard, as required by applicable law, *see id.* at 1022, and even acknowledging that something more than a Title VII violation is required to prove a constructive discharge, *id.* at 1021–22, the court finds that Martinez has generated genuine issues of material fact that her working environment was made so "intolerable" by epithets aimed at her Mexican origin, the gross offensiveness of those particular epithets, and the frequency with which Martinez was subjected to them that a reasonable person would have found her working conditions to be intolerable. Similarly, for many of the reasons that the court found above that Martinez has generated genuine issues of material fact on retaliatory animus, it also finds genuine issues of material fact as to the "intent" element of constructive discharge. A rea-

sonable jury could find that Martinez's resignation was a reasonably foreseeable consequence of the conduct to which she was subjected, giving rise to the necessary inference of intent to force her to quit, even in the absence of "conscious intent." *Id.*

### D. Disability Claims

The court turns, next, to Martinez's claims of disability discrimination under the ADA and Iowa Civil Rights Act. As noted above, in Count III of her Amended Complaint, Martinez pleaded disability discrimination as involving a hostile work environment based on her disability, failure to accommodate her disability, and "actually constructively" discharging her because of her disability. She did not, however, assert a claim that she was retaliated against for opposing or filing a charge of disability discrimination. In the defendants' summary judgment motion, in addition to their contention that Martinez simply is not "disabled" within the meaning of the ADA, the defendants only specifically challenged Martinez's failure-to-accommodate and constructive discharge claims. However, in response to Martinez's contention, in her resistance to the summary judgment motion, that she has a viable claim of hostile environment harassment because of her disability, the defendants filed a reply also challenging the sufficiency of the record to present a jury question on such a claim. Thus, it is clear that the defendants seek summary judgment on all of Martinez's "constituent" claims of disability discrimination.

#### 1. Arguments of the parties

In their motion for summary judgment, the defendants contend that Martinez cannot marshal record evidence to support either a *prima facie* case of disability discrimination or pretext. Somewhat more

specifically, they contend that Martinez simply cannot prove that she was "disabled" within the meaning of the ADA, because she has failed to generate a genuine issue of material fact that she has any physical or mental impairment that substantially limits any major life activity, has a record of such an impairment, or that the defendants perceived her as having such an impairment. Nor, they contend, can Martinez marshal evidence to show that she suffered any adverse employment action, or that there is a causal connection between any adverse employment action and any purported disability. Next, the defendants contend that Martinez cannot establish that Cole Sewell failed to provide reasonable accommodation for any disability, because Martinez has made no showing that she ever requested any specific accommodation or ever suggested any jobs that she thought that she could do. Thus, the defendants contend, the undisputed evidence reveals that Cole Sewell did attempt to reasonably accommodate Martinez by providing her with light duty work throughout her employment, once light duty work was prescribed by her doctors because of her thumb injury, and continued to try to determine what jobs she could do. As to constructive discharge, the defendant argue that, even supposing calling Martinez "lazy," "mummy," or "spider" somehow indicates harassment because of disability, nothing about such purported harassment rises to the level of creating an "intolerable" workplace. Nor, they contend, does sending Martinez home when no work could be found within her restrictions, or comments like, "Oh, shit! She can't do that job," rise to the level of a cognizably hostile or intolerable workplace based on disability. The defendants also reiterate their contention that there is no evidence that any warnings or disciplinary actions taken because of Martinez's absenteeism were pretextual, this time in the sense of pretexts for disability discrimination.

Not surprisingly, Martinez takes a different view of the record supporting her disability discrimination claims. First, she contends that she was a qualified person with a disability, because she had impairments to her right hand, wrist, and shoulder, and/or depression that affected a major life activity. Although the defendants contend that Martinez did not identify any substantial limitation in any major life activity, based on her own deposition testimony, Martinez contends that her testimony, in context, referred to her condition at the time of the deposition, not at the time of discriminatory conduct. Instead, she contends that her medical records and doctors' testimony clearly establish that she was substantially limited in the major life activities of lifting, learning, concentrating, and working. As to working, Martinez argues that there is sufficient evidentiary support, because of the numerous periods of time that she was off work, because of her inability to engage in repetitive actions with her right hand, her later lifting limitation of five pounds for her left arm, and a doctor's ultimate determination that she had a 10% upper extremity impairment which was equivalent to a 6% whole person impairment. She also contends that she was diagnosed with depression in May of 2000, which substantially limited her ability to concentrate, and that she was ultimately diagnosed with schizophrenia. She also contends that her diary evidence, deposition testimony, and medical records show that Cole Sewell repeatedly refused to provide her with reasonable accommodations, because she was frequently given job assignments that were beyond her restrictions. She believes that failure to accommodate her disability is also apparent from admissions of Brad Worrall and Tim Fausnaugh that they believed that she was exaggerating her condition. Next, she as-

serts that she has presented more than enough evidence of a hostile work environment because of her disability, that various Circuit Courts of Appeals have recognized such a claim, and that the Eighth Circuit Court of Appeals has assumed that such a claim exists, at least in order to dispose of such a claim on the merits. She contends that she has presented "a solid case" of harassment because of her disability, because employees repeatedly referred to her as "lazy" when she was given modified or light duty work assignments. She also argues that supervisors participated in this harassment by refusing to give her work at all or refusing to give her work within her doctors' restrictions, and repeatedly attempting to convince her doctors to change the restrictions they had imposed, for example, in the course of unannounced attendance at one of her doctors' appointments. She contends that this same evidence establishes both the "intolerability" and "intent" elements of a constructive discharge claim based on her disability.

In reply, the defendants contend that Martinez has utterly failed to establish that she is substantially limited in the major life activity of working, because of the absence of any evidence that she was disqualified by her impairments from a wide range of jobs, not just a particular job. Instead, they contend that her overall impairments were rated as only 10% of the upper extremity and 6% of the whole person. The defendants also contend that, although Martinez may now be suffering from depression and schizophrenia, which were purportedly caused by her employment, there is no evidence that she had or had a record of such mental impairments during the time that she was employed at Cole Sewell, or that if she did, Cole Sewell knew about them, no evidence that Martinez ever raised her mental health condition as an issue during her employment, and no evidence that she ever sought accommodation of any mental impairment.

The defendants also contend that Martinez has abandoned assertions that Cole Sewell regarded her as disabled, that she has presented sufficient evidence of any adverse employment action because of disability, or that she has established a causal connection between any adverse employment action and her disability by failing to respond to these issues in her brief. As to reasonable accommodation, although Martinez argues that her diary and medical records support her contention that Cole Sewell failed to provide reasonable accommodation, for example, by repeatedly assigning her tasks beyond her restrictions, the defendants argue that she has cited no portion of the record supporting such a contention. Cole Sewell also argues that, contrary to Martinez's contentions, she was only assigned work that the company's representatives believed was within her restrictions and that they believed, further, that her complaints that the work was not within her restrictions were based on exaggeration by Martinez of her condition. They reiterate that Martinez has never identified any specific accommodation that would have addressed her physical or mental conditions. As to Martinez's hostile environment claim based on disability, the defendants contend that it is unnecessary for the court to decide whether or not the Eighth Circuit Court of Appeals would recognize such a claim, because the record provides no evidence that any alleged harassment occurred because of her disability or that any action by the defendants was sufficient to cause Martinez's constructive discharge.

### 2. Analysis in light of applicable law

Because of the myriad issues raised in the motion for and resistance to summary judgment on Martinez's disability claims, the court finds that analysis of each issue in turn is appropriate, rather than attempting, at the outset, to paint a picture

of the broader legal landscape for such claims. Therefore, the court begins with the question of whether Martinez has generated a genuine issue of material fact that she is disabled within the meaning of the ADA. If not, then the court need proceed no further and the defendants are entitled to summary judgment on all of Martinez's "constituent" claims of disability discrimination.

### a. "Disability" within the meaning of the ADA

### i. What type of disability is at issue?

The parties recognize that "disability" within the meaning of the ADA[7] is defined in three discrete ways as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Thus, the first question is, which type or types of disability are at issue in this case? Martinez's Amended Complaint provides no illumination on this question, because she pleads only that she "is disabled within the meaning of 42 U.S.C. § 12102(2)." Amended Complaint, Count III, ¶ 26. However, in her brief, she argues as follows:

> The doctors' records and testimony in this case clearly show that Ms. Martinez was substantially limited in the major life activities of lifting, learning, concentrating and working. Furthermore, as

of at least March, 2000, Ms. Martinez had a history of being substantially limited in the major life activity of working because of the numerous periods of time she was off work.

Plaintiff's Brief at 16 (citations to Plaintiff's Appendix omitted). Thus, Martinez specifically argues that she is both "actually disabled," and that she "had a record of disability," the first and second statutory definitions under § 12102(2)(A) and (B). However, the court agrees with the defendants that it does not appear that Martinez is asserting that she is disabled within the meaning of the third statutory definition, that she was "regarded as" or "perceived to be" disabled, as defined by § 12102(2)(C).

### ii. Actual disability.

As this court very recently explained,

> The Equal Employment Opportunity Commission ("EEOC") has issued regulations defining the three elements of disability contained in subsection (A). See 29 C.F.R. § 1630.2 (2002). Those elements are: (1) a physical or mental impairment; (2) that affects a major life activity; (3) and whose effects substantially limit that activity. See id.; accord Bragdon v. Abbott, 524 U.S. 624, 631, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998) (directing district courts to perform three step inquiry to assess whether a particular condition constitutes a disability for purposes of subsection (A) of 42

---

7. The court is aware that Martinez has asserted disability discrimination claims under both the ADA and state law. However, the parties have not argued, and the court cannot find, that there is some significant difference between the way "disability" is defined under the ADA and the Iowa Civil Rights Act. See, e.g., Bearshield v. John Morrell & Co., 570 N.W.2d 915, 918 (Iowa 1997) ("Given the common purposes of the ADA and the ICRA's prohibition of disability discrimination, as well as the similarity in the terminology of these statutes, we will look to the ADA and

underlying federal regulations in developing standards under the ICRA for disability discrimination claims. [Citations omitted].... Given the identity of the applicable legal principles and analytical framework with respect to the question of whether one has a disability under the ADA and the ICRA, our subsequent discussion of whether [the plaintiff] is disabled applies equally to her claims under both statutes."). Therefore, the court's discussion of "disability" here applies equally to Martinez's claims under the ADA and the ICRA. Id.

U.S.C. § 12102(2)). "Physical or mental impairment" is defined as "[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, hemic and lymphatic, skin, and endocrine." *Id.* § 1630.2(h)(1). "Major Life Activities" are defined as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Id.* § 1630.2(i). In addition, the Eighth Circuit has expanded upon the non-exhaustive list found in the regulations and has held that sitting, standing, lifting, and reaching may also qualify as major life activities. *Cooper [v. Olin Corp.],* 246 F.3d [1083,] 1088 [ (8th Cir.2001) ] (citing *Fjellestad v. Pizza Hut of America, Inc.,* 188 F.3d 944, 948 (8th Cir. 1999)); *cf. Bragdon,* 524 U.S. at 639, 118 S.Ct. 2196 (emphasizing that the regulations provide an illustrative, rather than exhaustive, list of major life activities). Further, in *Toyota Motor Manufacturing v. Williams,* 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002), the Court explained that " '[m]ajor life activities' ... refers to those activities that are of central importance to daily life." *Id.* at 691. The ADA's "substantially limits" requirement indicates that an impairment must interfere with a major life activity " 'considerabl[y]' or 'to a large degree.' " *Id.*

*Barnes v. Northwest Iowa Health Center,* 238 F.Supp.2d 1053, ——, 2002 WL 31558024, *9 (N.D.Iowa Nov.18, 2002) (footnote omitted).

 Thus, the first element of proof for an actual disability claim is that the employee must have a "mental or physical impairment." *Id.* Martinez asserts that her impairments consisted of

injuries to her right hand, wrist, and shoulder, and depression. It is undisputed that the defendants knew about Martinez's injuries to her right hand, wrist, and shoulder. However, Martinez has not come forward with any evidence generating a genuine issue of material fact that the defendants knew that she suffered from depression or had any other mental impairment. *See* FED. R. CIV. P. 56(e) (in resisting summary judgment, the non-movant bears the burden to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial"); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Rabushka,* 122 F.3d at 562; *McLaughlin,* 50 F.3d at 511; *Beyerbach,* 49 F.3d at 1325. Indeed, at oral arguments, she all but conceded that her employer did not necessarily know of her mental impairments, although representatives may have known of her frequent episodes of crying. The court concludes that knowledge of episodes of crying is certainly not the same as knowledge of any mental impairment. The Eighth Circuit Court of Appeals has held that an employer cannot be held liable on a perceived disability claim if the employer did not know about the plaintiff's impairment. *See Webb v. Mercy Hosp.,* 102 F.3d 958, 960 (8th Cir.1996) (affirming summary judgment in favor of an employer on an employee's "regarded as" claim because the employer didn't know about the employee's mental impairment). Similarly, this court concludes that, even for an actual disability claim, the employer's knowledge of the impairment is an essential element, because, as a matter of common sense, in the absence of knowledge of an impairment, there can be no discriminatory animus, nor any triggering of an obligation to accommodate a disability. Thus, this court concludes that, for "actual" as

well as "perceived" disability claims, "whether a defendant knows that a physical [or mental] impairment is considered a disability is of no consequence," but the defendant must "know that the impairment exists." *Cf. United States v. City and County of Denver*, 49 F.Supp.2d 1233, 1241 (D.Colo.1999); *see also Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir.1997) ("The Americans with Disabilities Act of 1990, as amended in the Civil Rights Amendments Act of 1991, 42 U.S.C. § 12101 *et seq.*, prohibits covered employers from discriminating based upon the *known* physical or mental impairments of a qualified individual with a disability. 42 U.S.C. § 12112. 'Indeed the ADA imposes upon employers the duty to provide reasonable accommodations for *known* disabilities unless doing so would result in undue hardship upon the employer.' *Morisky v. Broward County*, 80 F.3d 445, 447 (11th Cir.1996) (citation omitted).") (emphasis added). Martinez also does not rely in her brief on her injuries to her *left* arm and shoulder as impairments upon which her disability claim is based, possibly because she acknowledges the merely "temporary" nature of any impairments to her left arm and shoulder. *See, e.g., Barnes*, 238 F.Supp.2d at ——, 2002 WL 31558024 at 12 (citing cases standing for the proposition that, "[a]s a matter of law, an impairment's impact must be permanent or long term to qualify as a substantially limiting impairment within the meaning of the ADA," not merely temporary) (internal quotation marks and citations omitted). Thus, Martinez may proceed, if at all, only on the basis of her physical impairments to her right hand, wrist, and shoulder.

Next, Martinez must show—or generate a genuine issue of material fact that—the identified impairments "substantially limited" a "major life activity." *See Barnes*, 238 F.Supp.2d at ——, 2002 WL 31558024 at *9. The "major life activities" that Mar-

tinez has identified, at least those that relate to her *physical* impairments to her right hand, wrist, and shoulder, are the major life activities of "lifting" and "working." The defendants do not appear to dispute that both "lifting" and "working" are major life activities, and indeed, both are identified as "major life activities" in the EEOC's Guidelines or Eighth Circuit decisions. *See id.* (citing major life activities identified in both sources). What the defendants do challenge is that Martinez's physical impairments "substantially limit" these "major life activities."

As the Supreme Court recently explained,

> It is insufficient for individuals attempting to prove disability status under this test [of actual disability] to merely submit evidence of a medical diagnosis of an impairment. Instead, the ADA requires those "claiming the Act's protection ... to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience ... is substantial."

*Toyota Motor Mfg.*, 534 U.S. at ——, 122 S.Ct. at 691–92 (quoting *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 567, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999), with alterations provided by the *Toyota Motor Mfg.* Court). As this court pointed out in *Barnes*,

> In *Toyota Motor*, the Court emphasized the need to perform an individualized assessment of a person's physical impairment to determine whether that impairment substantially limits the major life activities of that particular person. *See id.* at 692. The Court reasoned that medical diagnoses alone are insufficient to qualify a person as disabled within the meaning of subsection (A) of the ADA because symptoms vary in degree and extent from person to person. *Id.* In *Toyota Motor*, the respondent suf-

fered from carpal tunnel. *Id.* The Court noted the following:

> An individualized assessment of the effect of an impairment is particularly necessary when the impairment is one whose symptoms vary widely from person to person. Carpal tunnel syndrome, one of respondent's impairments, is just such a condition. While cases of severe carpal tunnel syndrome are characterized by muscle atrophy and extreme sensory deficits, mild cases generally do not have either of these effects and create only intermittent symptoms of numbness and tingling. Studies have further shown that, even without surgical treatment, one quarter of carpal tunnel cases resolve in one month, but that in 22 percent of cases, symptoms last for eight years or longer. When pregnancy is the cause of carpal tunnel syndrome, in contrast, the symptoms normally resolve within two weeks of delivery. Given these large potential differences in the severity and duration of the effects of carpal tunnel syndrome, an individual's carpal tunnel syndrome diagnosis, on its own, does not indicate whether the individual has a disability within the meaning of the ADA.

*Id.*

*Barnes*, 238 F.Supp.2d at ——, 2002 WL 31558024 at *10. These observations are of some interest here, because the diagnoses of the medical causes of Martinez's impairments to her right thumb include carpal tunnel syndrome, albeit a "mild" manifestation of the syndrome, as well as other causes.

Although her carpal tunnel syndrome may be "mild," the court nevertheless concludes that Martinez has generated genuine issues of material fact that the limitations on at least one major life activity imposed upon Martinez by her impair-

ments to her right hand, wrist, and shoulder " 'in terms of [her] own experience . . . is substantial.' " *Toyota Motor Mfg.*, 534 U.S. at ——, 122 S.Ct. at 692 (quoting *Albertson's, Inc.*, 527 U.S. at 567, 119 S.Ct. 2162, with alterations provided by the *Toyota Motor Mfg.* Court). First, the defendants ignore rather than confront the copious evidence in the record that Martinez's impairments substantially limited her in the major life activity of "lifting" Indeed, the restrictions imposed by Martinez's doctors consistently required *no* use of her right hand, and her doctors concluded that even these restrictions had failed to improve her condition.

■ Having concluded that Martinez has at least generated genuine issues of material fact that she was substantially limited in the major life activity of "lifting," it might not be necessary for the court to consider, as well, whether she has generated genuine issues of material fact that she was substantially limited in the major life activity of "working." This is so, because the EEOC, for example, has stated that the major life activity of "working" is to be considered as a last resort only "[i]f an individual is not substantially limited with respect to any other major life activity." 29 C.F.R. pt 1630, App. § 1630.2(j) (1998). However, the court deems it prudent, for purposes of summary judgment, to consider Martinez's contention that she is substantially limited in the major life activity of "working," at least as an alternative to her contention that she is substantially limited in the major life activity of "lifting."

As to that alternative contention, as this court has explained,

> "A person is substantially limited in working if she is 'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the av-

erage person having comparable training, skills, and abilities.'" *Fjellestad v. Pizza Hut of America, Inc.,* 188 F.3d 944, 949 (8th Cir.1999) (quoting *Doane v. City of Omaha,* 115 F.3d 624, 627 (8th Cir.1997)). The regulations direct district courts to consider factors, such as the number and type of jobs from which the impaired individual is disqualified; the geographical area to which the individual has reasonable access; and the individual's job training, experience, and expectations, in order to determine whether a person is substantially limited in the major life activity of working. 29 C.F.R. § 1630.2(j)(3)(ii); *accord Fjellestad,* 188 F.3d at 949 (listing above factors); *Helfter v. United Parcel Serv., Inc.,* 115 F.3d 613, 617 (8th Cir.1997) (same).

*Barnes,* ── F.Supp.2d at ──, 2002 WL 31558024 at *20. The court agrees with the defendants that Martinez has pointed only to evidence that establishes that she could not perform any of the jobs available at Cole Sewell's Clear Lake, Iowa, plant, but she has not met her burden under Rule 56(e) to designate specific facts that she is unable to perform "either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities," such as evidence of the number and type of jobs from which she is disqualified; the geographical area to which she has reasonable access; and her job training, experience, and expectations. *Id.* (internal quotation marks and citations omitted). In the absence of any identification of evidence generating a genuine issue of material fact on these matters, the defendants are entitled to summary judgment on Martinez's contention that she was substantially limited in the major life activity of working. *See Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548 (if a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law"); *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.,* 113 F.3d at 1492.

### ▓▓▓▓ iii. Record of disability. As this court also explained in *Barnes,*

> To establish the existence of a record of a disability, an individual must show that she "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." *Costello v. Mitchell Pub. Sch. Dist. 79,* 266 F.3d 916, 924 (8th Cir.2001) (citing 29 C.F.R. § 1630.2(k)). "In order to have a record of a disability, an employee's 'documentation must show' that she has a history of or has been subject to misclassification as disabled." *Taylor v. Nimock's Oil Co.,* 214 F.3d 957, 961 (8th Cir.2000) (citing *Strippit,* 186 F.3d at 915).

*Barnes,* ── F.Supp.2d at ──, 2002 WL 31558024 at *31. The defendants contend that a "record of disability" claim cannot be based simply on a record of being excused from work, even on several occasions, because of a workplace injury. The court agrees that such evidence does not constitute evidence that Martinez was substantially limited in one or more major life activities—not even the major life activity of "working," which, as explained above, requires proof of preclusion from a class or broad range of jobs, not just one specific job. On the other hand, as explained above, the medical records and other evidence, taken as a whole, does generate a genuine issue of material fact that Martinez had a record of an impairment to her right thumb, wrist, and shoulder that substantially impaired her in the major life activity of "lifting." Therefore, the defendants are not entitled to summary judgment on Martinez's "record of disability" claim at this first stage in the analysis.

 Nevertheless, Martinez cannot, as a matter of law, assert a failure-to-accommodate claim based on a record of disability. As this court explained in *Barnes*, "a plaintiff can establish the first prong of her *prima facie* case of a failure-to-accommodate claim only by showing she was 'disabled' within the meaning of [§ 12102(2)(A) ]," that is, on the basis of an "actual disability." *See Barnes*, 238 F.Supp.2d at ——, 2002 WL 31558024 at *30. More specifically, as this court explained in *Barnes*,

The ADA does not impose upon an employer the duty to accommodate a qualified "disabled" employee when the employee is statutorily disabled within the meaning of 42 U.S.C. § 12102(B) (record of impairment) or 42 U.S.C. § 12102(C) (regarded as disabled). *See Weber v. Strippit, Inc.*, 186 F.3d 907, 917 (8th Cir.1999) (holding that " 'regarded as' disabled plaintiffs are not entitled to reasonable accommodations"); *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 n. 2 (3d Cir.1999) (commenting that extending a duty to accommodate to "record of" claims is plagued by the same concerns as allowing a duty to accommodate claim to a "regarded as" plaintiff, but expressly not deciding the issue); *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 509 n. 6 (7th Cir.1998) (strongly suggesting that employer does not incur a duty to accommodate an employee based on a history of a substantially limiting impairment when current limitations are not substantial); *Gilday v. Mecosta County*, 124 F.3d 760, 764 n. 4 (6th Cir.1997) (illustrating a reasonable request for accommodation and stating "[t]hat such a person could request accommodation means that he is actually physically disabled under the Act, and not merely considered to be disabled or have a record of disability. *Compare* 42 U.S.C. § 12102(2)(A), *with id.* § 12102(2)(B), (C). A person without

an actual disability would not need any accommodation."). Thus, no cause of action lies for an employer's failure to accommodate a disabled employee unless that employee is actually disabled within the meaning of 42 U.S.C. § 12102(A).

*Barnes*, 238 F.Supp.2d at ——, 2002 WL 31558024 at *31 (footnotes omitted). Therefore, as in *Barnes*, the court grants the defendants' motion for summary judgment as to Martinez's claim of failure to accommodate her disability to the extent that such a claim is based on a purported failure to accommodate her "record of disability." *Id.*

 Nothing in the applicable law, however, necessarily precludes Martinez from pursuing a claim of a hostile work environment based upon a "record of disability" rather than an "actual disability." This is so for at least two reasons. First, the need for accommodation is not pertinent to a hostile environment claim, and, second, the same discriminatory animus is afoot whether the plaintiff is "actually" disabled or only has a "record of disability," and is harassed on that basis.

### b. Failure to accommodate

 **i. The legal duty to accommodate.** Turning to whether Martinez can generate genuine issues of material fact on her claim of failure to accommodate her actual disability, as this court also explained in *Barnes*,

"[D]iscrimination under the ADA encompasses not only adverse actions motivated by prejudice and fear of disabilities, but also includes failing to make reasonable accommodations for a plaintiff's disabilities." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir.1999); *accord* 42 U.S.C. § 12112(b)(5)(A). "Where an employee suffers from an actual disability (i.e., an

impairment that substantially limits a major life activity), the employer cannot terminate the employee [or take other adverse action against the employee] on account of the disability without first making reasonable accommodations that would enable the employee to continue performing the essential functions of his job." *Strippit*, 186 F.3d at 916.

*Barnes*, 238 F.Supp.2d at ——, 2002 WL 31558024 at *24.

■ *ii. Evidence of assignments beyond plaintiff's restrictions.* The defendants contend that there is plenty of evidence of their attempts to discover what jobs Martinez could do, despite her impairments, but no evidence that Martinez ever identified any specific job that would serve as a reasonable accommodation for her disability. The court agrees. First, even the plaintiff's own evidence is that the defendants provided her with a variety of different jobs in an attempt to find one that she could do, despite her impairments. Although Martinez contends that the defendants frequently assigned her work beyond her medical restrictions, the court has not been directed to any evidence raising an inference that the defendants did so knowingly, intentionally, or with reckless disregard to Martinez's ability to perform the jobs. Moreover, the record evidence that Martinez cites in support of her contentions that representatives of Cole Sewell "attempted or actually convinced the doctor to change the restrictions upon Ms. Martinez," or made an "unannounced" appearance at one of her medical appointments at which they "convinced the doctor to change his restrictions," *see* Plaintiff's Brief at 20, simply do not support those contentions. Instead, the record shows that the employer's representatives requested that "no work" restrictions be changed with assurances that *any* restrictions imposed would be accommodated, because the employer desired to get the plaintiff back to work and the doctor

agreed that it was important to get the plaintiff back to work. The record also shows that the presence of the employer's representatives at medical appointments was expressly requested *by the treating physician* to help clarify any restrictions and to avoid communication problems resulting from language barriers or exchanges of messages. The defendants point out that any failure to assign Martinez work within her capabilities was merely the result of misunderstandings about the extent of Martinez's restrictions, and that comments by supervisors or managers, of the "Oh, shit! She can't do that either" variety, indicate only a realization of her limitations, not any discriminatory or retaliatory animus. Similarly, repeated requests that Martinez repeat things and evidence that supervisors could not understand her English is not necessarily an indication of discriminatory or retaliatory animus, because it might simply indicate conscientious attempts to communicate about physical limitations or other matters and frustration at the difficulties (indeed, it is possible that even laughter during conversations with Martinez had less to do with an intent to deride her ability to speak English than a nervous reaction to actual difficulties of understanding what she was trying to say, but that is an issue pertinent to her claim of a hostile environment based on national origin, a claim on which the court has already concluded that there are genuine issues of material fact). A closer question may be presented by Martinez's assertion that statements by certain of Cole Sewell's representatives— that they believed that Martinez was exaggerating her condition, because they believed that she had only been given work within her restrictions, as those representatives understood the restrictions—shows a refusal to accommodate her disability, but the court still does not find in this evidence sufficient support for Martinez's

failure-to-accommodate claim to let it go to the jury.

However, even if the court were to agree that there are genuine issues of material fact present on these issues, because so much depends upon the inferences to be drawn from comments and actions *in context* in an employment discrimination case, *see, e.g., Snow,* 128 F.3d at 1205 ("Because discrimination cases often turn on inferences rather than on direct evidence, we are particularly deferential to the nonmovant," citing *Crawford*); *Crawford,* 37 F.3d at 1341 ("Because discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant."), the court would nevertheless find that the defendants are entitled to summary judgment on Martinez's failure-to-accommodate claim. This conclusion is based on the parties' respective duties to engage in an "interactive process" to determine what accommodations are reasonable.

■ *iii. Obligations in the "interactive process."* In *Barnes,* this court considered in detail the respective duties of the employee and employer in the "interactive process" to determine what accommodations would be required, and the court will not repeat that discussion here. *See Barnes,* 238 F.Supp.2d at ——, 2002 WL 31558024 at *24–*30. However, in light of the principles discussed in *Barnes,* the court concludes that Martinez has failed to generate a genuine issue of material fact that she held up her end of the "interactive process" to determine what accommodations would be required.

■ The defendants argue that Eighth Circuit precedent establishing that the employee must notify the employer that an accommodation is needed translates into a requirement that the employee must notify the employer of specific jobs that she

thinks that she can do. *See* Defendants' Brief at 49–50 (citing *Cannice v. Norwest Bank Iowa, N.A.,* 189 F.3d 723, 727 (8th Cir.1999); *Mole v. Buckhorn Rubber Prods., Inc.,* 165 F.3d 1212, 1217 (8th Cir. 1999); *Wallin v. Minnesota Dep't of Corrections,* 153 F.3d 681, 689 (8th Cir.1998)). The court is unwilling to make such a leap. Rather, as this court explained in *Barnes,* the plaintiff's notice that accommodation is required, or the employer's actual knowledge of the plaintiff's impairments, *triggers* the employer's obligation to engage in a good faith, interactive process to determine what specific accommodations are possible and can be undertaken without undue hardship. *See Barnes,* 238 F.Supp.2d at ——, 2002 WL 31558024 at *26–*27. It is undisputed that Cole Sewell knew about Martinez's impairments to her right thumb, wrist, and shoulder, so that Cole Sewell's obligation to engage in the interactive process was triggered. *Id.*

■ On the other hand, in *Barnes,* this court relied on the reasoning of the Seventh Circuit Court of Appeals on assignment of responsibility for the breakdown of the interactive process:

> The Seventh Circuit's reasoning in *Bultemeyer [v. Fort Wayne Community Schools,* 100 F.3d 1281 (7th Cir.1996),] is instructive on this point:
>
>> An employee's request for reasonable accommodation requires a great deal of communication between the employee and employer.... [B]oth parties bear responsibility for determining what accommodation is necessary.... "[N]either party should be able to cause a breakdown in the process for the purpose of either avoiding or inflicting liability. Rather, courts should look for signs of failure to participate in good faith or failure by one of the parties to help the other party determine what spe-

cific accommodations are necessary. A party that obstructs or delays the interactive process is not acting in good faith. A party that fails to communicate, by way of initiation or response, may also be acting in bad faith. In essence, courts should attempt to isolate the cause of the breakdown and then assign responsibility."

*Bultemeyer,* 100 F.3d at 1285 (quoting *Beck v. University of Wis. Bd. of Regents,* 75 F.3d 1130, 1135 (7th Cir.1996)). *Barnes,* 238 F.Supp.2d at ——, 2002 WL 31558024 at *28–*29. An employee cannot simply complain about the need for accommodation or complain about the accommodations offered by the employer, leaving entirely to the employer the responsibility to exert its efforts and imagination to come up with an accommodation that will work, just as an employer cannot place the responsibility entirely on the employee to identify specific jobs that she can do, where the employer plainly has superior knowledge about what jobs are available at its plant or premises.

Where, as here, the record contains copious evidence of the employer's repeated attempts to determine what jobs would reasonably accommodate the employee's impairments—including not only trying a variety of job assignments, but direct contact with the employee's treating physicians to try to understand what abilities the employee retained despite her impairments, and repeated requests to the plaintiff and her doctors for help to determine what would get the plaintiff back to work—but is devoid of evidence of any attempt by the employee to identify any specific jobs, kinds of jobs, or even tasks that she could do, notwithstanding her impairments, the "cause of the breakdown" unmistakably was the employee. *See id.* Even in her brief in resistance to summary judgment, Martinez asserts only that she "has established through her own testimo-

ny, her diary and the medical records that Cole Sewell repeatedly refused to provide her with reasonable accommodations," apparently because "[s]he was frequently given job assignments that were beyond her restrictions even though she complained about them on a regular basis." *See* Plaintiff's Brief at 17. However, nowhere has Martinez identified evidence that, beyond "complaining" about job assignments, she ever affirmatively identified any jobs or kinds of tasks that she *could* do, or otherwise acted "to help the other party determine what specific accommodations [we]re necessary." *Barnes,* 238 F.Supp.2d at ——, 2002 WL 31558024 at *28.

To put it another way, Martinez has failed to meet her burden to demonstrate that there is a genuine issue of material fact that she met her obligations under the interactive process, *see* FED. R. CIV. P. 56(e) (in resisting summary judgment, the non-movant bears the burden to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial"); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Rabushka,* 122 F.3d at 562; *McLaughlin,* 50 F.3d at 511; *Beyerbach,* 49 F.3d at 1325, and in this case, this issue presents one of "those rare instances where there is no dispute of fact and where there exists only one conclusion." *Johnson,* 931 F.2d at 1244; *see also Webb v. St. Louis Post–Dispatch,* 51 F.3d 147, 148 (8th Cir.1995) (quoting *Johnson,* 931 F.2d at 1244); *Crawford,* 37 F.3d at 1341 (quoting *Johnson,* 931 F.2d at 1244). The defendants are, therefore, entitled to summary judgment on Martinez's failure-to-accommodate claim.

#### c. *Hostile environment*

Martinez is correct that she also pleaded, as part of her disability discrimination

claim, creation of a hostile work environment based on disability. The defendants responded to this contention by arguing, in their reply brief, that they are entitled to summary judgment on such a claim, as well, because Martinez cannot identify any conduct rising (or sinking) to the level of a legally cognizable hostile environment based on disability.

 As the Eighth Circuit Court of Appeals recently explained,

[T]his court has "never recognized an ADA [or Rehabilitation Act] claim based on a hostile work environment." *Wallin v. Minnesota Dep't of Corrs.*, 153 F.3d 681, 687 (8th Cir.1998). For purposes of analysis, we will assume one exists and "would be modeled after the similar claim under Title VII." *Id.* at 688 (internal quotation omitted). Thus, [the plaintiff] ha[s] to offer evidence of harassment that was " 'so severe or pervasive as to alter the conditions of [her] employment and create an abusive working environment.' " *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 786, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)).

*Jeseritz v. Potter*, 282 F.3d 542, 547 (8th Cir.2002). Here, the court concludes that, as a matter of law, Martinez cannot establish such a claim, even if the claim were recognized in this circuit, because she cannot generate a genuine issue of material fact on the requisite severity or pervasiveness of the hostile or abusive environment.

This is so, first, because the evidence upon which Martinez relies to show that she can generate a genuine issue of material fact that she was subjected to a hostile environment based on disability is the same evidence that she relied on, unsuccessfully, to show a failure to accommodate: evidence that she was repeatedly assigned work that was beyond her restrictions. Where the court concluded that, under the circumstances of this case, this evidence would not reasonably generate a genuine issue of material fact that the employer failed to engage in the "interactive process" to determine what accommodation was required, but instead demonstrated that the employer had met its obligation in the "interactive process," the same evidence cannot reasonably support a claim of "harassment" because of disability that was so "severe or pervasive" as to create a hostile work environment. *See Jeseritz*, 282 F.3d at 547 (if a claim of hostile environment harassment is viable under the ADA, the harassment must be "severe or pervasive" to be actionable).

Second, unlike the alleged harassment by co-workers and supervisors based upon Martinez's national origin—which allegedly involved frequent use of such derogatory, humiliating, and inflammatory epithets as "shitty Mexican" and "wetback"—the alleged harassment by co-workers and supervisors because of disability simply does not satisfy, as a matter of law, the "severe or pervasive" requirement. The only additional evidence of disability harassment that Martinez has identified is that co-workers, and perhaps supervisors, called her "lazy" or "mummy," the latter comment in reference to her bandages or splints. Even if such comments were "repeated," as Martinez contends, "by 'looking at all the circumstances,' " in addition to the " 'frequency of the discriminatory conduct,' " these comments lack the necessary " 'severity,' " they were not " 'physically threatening,' " nor even particularly " 'humiliating,' " but instead constituted " 'mere offensive utterance[s]' " that did not " 'unreasonably interfer[e] with [Martinez's] work performance.' " *Breeden*, 532 U.S. at 270–71, 121 S.Ct. 1508 (quoting *Faragher v. Boca Raton*, 524 U.S. at 787–788, 118 S.Ct. 2275, in turn quoting *Harris*, 510 U.S. at 23, 114 S.Ct. 367).

Because Martinez has failed to generate a genuine issue of material fact that she

was subjected to disability harassment that was sufficiently "severe and pervasive" to sustain such a claim, even if it is recognized in this circuit, the defendants are entitled to summary judgment on that claim. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548; *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.*, 113 F.3d at 1492.

### d. Constructive discharge

 In light of the foregoing, the court also need give no more than brief consideration to Martinez's claim that any disability discrimination caused her constructive discharge. Even if her claims of failure to accommodate her disability and creation of a hostile work environment because of her disability could be sustained on the present record, which the court concluded above they could not, the court has no trouble concluding that nothing about the alleged disability discrimination made Martinez's workplace so "intolerable" as to make a reasonable person believe that she had no alternative but to quit, or that her employer intended to force her to quit. *See Baker*, 220 F.Supp.2d at 1021–23. Therefore, even if the defendants were not otherwise entitled to summary judgment on Martinez's disability discrimination claims, they would be and are entitled to summary judgment on her contention that disability discrimination caused her constructive discharge.

### E. Intentional Infliction Of Emotional Distress

### 1. Arguments of the parties

Finally, the court turns to the defendants' contention that they are entitled to summary judgment on Martinez's claim of intentional infliction of emotional distress on the ground that the claim is preempted by her statutory discrimination claims. Somewhat more specifically, the defendants contend that Martinez has alleged that she suffered severe emotional distress when the defendants subjected her to a hostile work environment and discrimination because of her disability and national origin, which demonstrates that the claim does not have a "separate and independent basis," apart from discrimination, but instead is entirely based on the same conduct that Martinez alleges is discriminatory, and as such, is preempted by the exclusivity provisions of the state civil rights statute.

In response, Martinez argues that her claim of intentional infliction of emotional distress does not hinge upon or require proof of discrimination, because the claims is complete without any reference to discrimination on the basis of national origin or disability. The conduct upon which the claim is based, she contends, includes coercing doctors to change her restrictions, harassing her because she was "lazy," and refusing to give her work. Therefore, to the extent that she might not meet the definition of an employee with a disability, she contends that her claims should survive as claims of intentional infliction of emotional distress.

In reply, the defendants contend that Martinez is trying to manufacture a new claim of negligent supervision and retention that was not pleaded in her Amended Complaint. Instead, they point out, paragraph by paragraph, how Martinez's claim of intentional infliction of emotional distress relies on precisely the same allegations as her discrimination claims. Thus, they contend, her claim of intentional infliction of emotional distress is contingent upon proof of precisely the same things as her discrimination claims, and is, therefore, preempted.

### 2. Applicable law

 As the Iowa Supreme Court has explained,

To establish a prima facie claim for intentional infliction of emotional distress the plaintiff must satisfy the following four elements: (1) outrageous conduct by the defendant; (2) the defendant intentionally caused, or recklessly disregarded the probability of causing, the emotional distress; (3) plaintiff suffered severe or extreme emotional distress; and (4) the defendant's outrageous conduct was the actual and proximate cause of the emotional distress. *Steckelberg v. Randolph*, 448 N.W.2d 458, 461 (Iowa 1989).

Before defendants' conduct can be considered outrageous, it must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Harsha v. State Savs. Bank*, 346 N.W.2d 791, 801 (Iowa 1984). Outrageous conduct must be established by substantial evidence. *Vinson v. Linn–Mar Community Sch. Dist.*, 360 N.W.2d 108, 118 (Iowa 1984).

*Fuller v. Local Union No. 106 of United Broth. of Carpenters*, 567 N.W.2d 419, 423 (Iowa 1997).

However, this court considered whether a state common-law claim of intentional infliction of emotional distress is preempted by the Iowa Civil Rights Act a few years ago in *Westin v. Mercy Medical Servs., Inc.*, 994 F.Supp. 1050 (N.D.Iowa 1998). In *Westin*, this court explained the applicable principles, in pertinent part, as follows:

> The ICRA, Iowa Code Chapter 216, established the Iowa Civil Rights Commission and provides statutory remedies for enforcement of basic civil rights. *Greenland v. Fairtron Corp.*, 500 N.W.2d 36, 37 (Iowa 1993). The Iowa Supreme Court has held that section 216.16(1) renders the chapter's remedies exclusive and preemptive. *Greenland*,

500 N.W.2d at 37; *Grahek v. Voluntary Hosp. Co-op. Ass'n of Iowa, Inc.*, 473 N.W.2d 31, 33 (Iowa 1991); *Northrup v. Farmland Indus., Inc.*, 372 N.W.2d 193, 197 (Iowa 1985). Preemption occurs unless the claims are separate and independent, and therefore incidental, causes of action. *Greenland*, 500 N.W.2d at 38; *Grahek*, 473 N.W.2d at 34; *Vaughn v. Ag Processing, Inc.*, 459 N.W.2d 627, 639 (Iowa 1990). The claims are not separate and independent when, under the facts of the case, success on the claim not brought under chapter 216 requires proof of discrimination. *Greenland*, 500 N.W.2d at 38.

\* \* \* \* \* \*

In its most recent pronouncement on the subject, the Iowa Supreme Court held that a claim of intentional infliction of emotional distress was preempted by the ICRA because the plaintiff had to prove sexual discrimination to be successful on the emotional distress claim. *Greenland*, 500 N.W.2d at 38. The court held that the test is whether, in light of the pleadings, discrimination is made an element of the alternative claims. *Id.* The court concluded that:

> We think the answer with regard to the emotional distress claim is yes, resulting in preemption. Discrimination through sexual harassment is the "outrageous conduct" [plaintiff] specifically alleges in her claim for intentional infliction of emotional distress. So under the facts she alleges, if she were to fail in her claim of discrimination, [plaintiff] would necessarily fail in her claim of intentional infliction of emotional distress. Stated otherwise, it is impossible for [plaintiff] to establish the emotional distress she alleges without first proving discrimination.

*Id.* The court also addressed the apparent inconsistency between this holding

and the *Northrup* decision in which the court had entertained an emotional distress claim based on termination for alcoholism after concluding that the plaintiff had a viable claim under 601A for discrimination on the basis of alcoholism. *Northrup*, 372 N.W.2d at 197–99. In *Greenland*, the Iowa Supreme Court noted that contrary to the plaintiff's contentions, the decisions in *Vaughn* and *Northrup* did not implicitly allow separate claims for intentional infliction of emotional distress in conjunction with the ICRA discrimination claims, because preemption of the emotional distress claims was never raised or considered in either appeal. *Greenland*, 500 N.W.2d at 38.

*Westin*, 994 F.Supp. at 1056–57.

Nothing in more recent decisions of the Iowa Supreme Court is to the contrary. Just last year, the Iowa Supreme Court considered a contention that *Greenland* had been wrongly decided, summarizing the holding of that case as follows:

> In *Greenland v. Fairtron Corp.*, we held that the ICRA, Iowa Code chapter 216 (formerly chapter 601A), provides the exclusive remedy for particular conduct prohibited under that statute. 500 N.W.2d 36, 38 (Iowa 1993). "Preemption occurs unless the claims are separate and independent, and therefore incidental, causes of action." *Id.* If, under the facts of the case, success on the non-ICRA claims requires proof of discrimination, such claims are not separate and independent. *Id.* "The test is whether, in light of the pleadings, discrimination is made an element of" the non-ICRA claims.

*Channon v. United Parcel Service, Inc.*, 629 N.W.2d 835, 857 (Iowa 2001). The Iowa Supreme Court then concluded, "we see no reason to revisit our holding in *Greenland*. We think the conclusion this court reached in *Greenland* is a correct

interpretation and application of the ICRA." *Id.*

### 3. Application of the law

■ From the face of the Amended Complaint, it is apparent, as the defendants contend, that Martinez's claim of intentional infliction of emotional distress relies on precisely the same conduct that she elsewhere contends is discriminatory. Specifically, her claim of intentional infliction of emotional distress in Count V is premised on a repleading of paragraphs 1 through 11, 13 through 19, and 27 through 31 of the Amended Complaint. However, paragraphs 1 through 11 plead no conduct of the defendants, but instead plead a jurisdictional basis for the Amended Complaint, the identity of the parties, and conditions precedent to suit. *See* Amended Complaint, ¶¶ 1–11. Paragraphs 13 through 19, however, allege conduct forming the basis of Martinez's claims of a hostile environment, disparate treatment, and constructive discharge on the basis of sex and national origin in violation of Title VII, *see id.* at ¶¶ 13–19, and paragraphs 27 through 31 allege conduct forming the basis of Martinez's claims of disability discrimination in violation of the ADA. *Id.* at ¶¶ 27–31. Although Martinez does not allege that her claim of intentional infliction of emotional distress is premised on the same conduct establishing her claims of sex, national origin, and disability discrimination in violation of the ICRA, she cannot thereby avoid preemption of the common-law claim by the state statutory claim. This is so, because the claim based on the ICRA is nevertheless premised on the same conduct as the common-law claim, because Martinez also alleges that the ICRA claim is based on the reallegation of paragraphs 1 through 10, 12 through 18, and 26 through 30 of the Amended Complaint. *Id.* at 32. Thus, as pleaded, "discrimination is made an element of the al-

ternative claim" of intentional infliction of emotional distress, and Martinez must prove discrimination to be successful on her emotional distress claim. *See Westin,* 994 F.Supp. at 1057. Therefore, under the *"Greenland* test," her claim of intentional infliction of emotional distress is preempted by her discrimination claims. *Id.*

To the extent that Martinez now tries to premise her claim of intentional infliction of emotional distress on conduct that was not alleged to be discriminatory, or that the court has now held does not constitute actionable discrimination, there is, first, nothing in Iowa law that implicitly allows a plaintiff to plead separate claims for intentional infliction of emotional distress in conjunction with ICRA discrimination claims. *See id.* at 1058 (citing *Greenland,* 500 N.W.2d at 38). Second, the court agrees with the defendants' contention at oral arguments that any conduct that was not alleged to be discriminatory, or that the court has held is not actionable discrimination, simply is not sufficiently "outrageous" to sustain the state common-law claim. *See Fuller,* 567 N.W.2d at 423.

Therefore, the defendants are entitled to summary judgment on Martinez's claim of intentional infliction of emotional distress.

## III. CONCLUSION

Having made its way, at last, to the end of the daunting list of issues presented by the defendants' motion for summary judgment and the plaintiff's resistance, the court will briefly summarize its conclusions. First, Martinez's express withdrawal of her "claim of sexual discrimination" from this lawsuit encompassed withdrawal of her "constituent" claims of hostile environment harassment, disparate treatment, and constructive discharge based on sex, but not her claim of retaliation based on complaints about sexual discrimination, because the latter claim is pleaded in a separate count of Martinez's Amended Com-

plaint and retaliation is prohibited by a separate section of Title VII from the statutory prohibition on other discriminatory conduct. Although the court agrees with the defendants that Martinez has implicitly withdrawn her claim of disparate treatment based on national origin, or has failed to carry her burden in resistance to a motion for summary judgment on that claim, by failing to identify evidence in support of that claim, in an abundance of caution, the court concludes that Martinez has at least attempted to resist the defendants' motion for summary judgment on her claim that harassment because of her national origin ultimately caused her constructive discharge. The court also recognizes that the defendants have withdrawn their motion for summary judgment as to Martinez's claim of a hostile environment based on national origin.

As to more substantive questions, concerning the claims still at issue in the case and on the defendants' motion for summary judgment, the court concludes, first, that Martinez has satisfied or generated genuine issues of material fact as to the elements of her *prima facie* case of retaliation in violation of Title VII. Moreover, considering the shifting of burdens at the final stages of the *McDonnell Douglas* analysis of this claim, the court also concludes that this is not one of "those rare instances where there is no dispute of fact and where there exists only one conclusion," such that summary judgment is appropriate on Martinez's Title VII retaliation claim. Consequently, the defendants are not entitled to summary judgment on Martinez's claim of retaliation in violation of Title VII. Nor are the defendants entitled to summary judgment on Martinez's contention that violations of Title VII, based on her national origin, caused her constructive discharge. Specifically, Martinez has generated genuine issues of material fact that she was subjected to such

frequent, gross, and offensive epithets concerning her Mexican origin as to make her workplace intolerable and that a reasonable jury could conclude that Martinez's resignation was a reasonably foreseeable consequence of the conduct to which she was subjected, giving rise to the necessary inference of intent to force her to quit, even in the absence of "conscious intent."

Turning to Martinez's disability discrimination claims, the court concludes that Martinez has premised these claims on "actual disability" and a "record of disability," but not on "perceived disability," although a claim of failure to accommodate disability can only be based on "actual disability." Also, Martinez's disability discrimination claims must be based on physical impairments to her right hand, not any mental impairments, because the latter were not impairments about which the employer had the requisite knowledge. Ultimately, however the court concludes that the defendants are entitled to summary judgment on Martinez's claim of failure to accommodate her disability, because Martinez has failed to generate a genuine issue of material fact that the defendants knowingly or intentionally assigned her work that exceeded her medical restrictions, and/or because the record simply will not support an inference that Martinez upheld her end in the "interactive process" to discover what accommodation was appropriate for her impairments, while Cole Sewell plainly did. Similarly, the defendants are entitled to summary judgment on Martinez's claim of a hostile environment based on disability, even assuming that such a claim would be recognized in this circuit, because Martinez has not generated a genuine issue of material fact that she was subjected to any "harassment" because of her disability that was sufficiently "severe or pervasive" to sustain the claim, where, in the first instance, she relies on conduct that the court has held did *not* constitute failure to accommodate, and in

the second instance, she relies on alleged harassment by co-workers and supervisors involving name-calling that is insufficient. Even if Martinez has stated actionable claims of disability discrimination, however, the court concludes that, as a matter of law, she has not generated a genuine issue of material fact that any disability discrimination to which she was subjected was sufficient to cause her constructive discharge.

Finally, the court concludes that the defendants are entitled to summary judgment on Martinez's claim of intentional infliction of emotional distress for two reasons. First, as a matter of law, the claim is preempted by Martinez's state statutory claims of discrimination. Second, to the extent that the claim is not preempted, Martinez has not generated a genuine issue of material fact that the conduct upon which she relies is sufficiently "outrageous" to sustain the claim.

THEREFORE,

1. Martinez has **withdrawn** her claims of sexual discrimination in violation of Title VII and the Iowa Civil Rights Act in Counts I and IV, respectively, of her Amended Complaint, and those claims are **dismissed**.

2. The Defendants' motion for summary judgment is **granted in part and denied in part**, as follows:

a. The motion is **denied** as to Martinez's claims of national origin discrimination in violation of Title VII and the Iowa Civil Rights Act in Counts I and IV, respectively;

b. The motion is **denied** as to the claim of retaliation in violation of Title VII in Count II;

c. The motion is **granted** as to the claim of disability discrimination in violation of the ADA and in violation of the Iowa Civil Rights Act, in Counts III and

IV, respectively, and as a consequence, Count III, in its entirety, and the pertinent part of Count IV are dismissed; and

d. The motion is **granted** as to the claim of intentional infliction of emotional distress in Count V, and that count is dismissed in its entirety.

3. This matter will proceed to trial on the plaintiff's claim of a hostile work environment because of national origin in violation of Title VII and the Iowa Civil Rights Act, in Counts I and IV, respectively, and retaliation for complaining about discrimination in violation of Title VII in Count II.

**IT IS SO ORDERED.**